890 So.2d 604 (2004)
Janice P. BRUNO
v.
JEFFERSON PARISH LIBRARY DEPARTMENT.
No. 04-CA-504.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*605 Dwight W. Norton, Elmer G. Gibbons, Metairie, LA, for Plaintiff/Appellant, Janice P. Bruno.
Clement P. Donelon, Metairie, LA, for Defendant/Appellee, Jefferson Parish Library Department.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is a civil service appeal by a parish employee regarding a multi-day suspension without pay. We affirm the decision of the Jefferson Parish Personnel Board upholding the appointing authority's action.
The gist of the employee's appeal is that the discipline was not properly imposed because some of the reasons listed for the suspension did not justify the action. Appellant argues the other reasons listed constitute an invalid basis for suspension because the employee had already been disciplined for those infractions.
Janice P. Bruno (hereafter "Bruno") is employed by the Jefferson Parish Library as a Clerk III. Her main job duty is as meeting room coordinator. She handles bookings of library meeting rooms, which are used by various public agencies and private organizations. Among her responsibilities is the duty to inform library maintenance personnel of the meetings scheduled, as well as notifying the maintenance department when meetings are cancelled. Maintenance staff members set up the meeting rooms and clean them after use.
On November 12, 2002, Bruno's supervisor, Library Business Manager Joan Baptiste, issued a letter of reprimand and first warning to Bruno for failing to notify the maintenance department that two events at the East Bank Regional Library had been cancelled. On each occasion a maintenance employee had spent time setting up the meeting room for the scheduled event; on one of the occasions the maintenance employee had worked overtime to do the room setup.
On February 3, 2003, Library Director Joan Adams issued a letter to Bruno, notifying her that she was being given a 5.5 day suspension without pay. The basis for the suspension was violation of conduct regulations, violation of sick leave policy, and continued defiance of library procedures. Specifically, the letter referred to the following: letter of reprimand and first warning dated November 12, 2002, issued to Bruno for her failure to follow procedures that caused lost time and money; Bruno's shouting at her supervisor at a meeting on January 8, 2003; and Bruno's failure to advise her supervisor on January 14, 2003, that she was taking medical leave immediately.
Bruno appealed. Her civil service appeal was heard over the course of three separate days. The first day, May 27, 2003, consisted of discussions among the hearing examiner/referee and counsel regarding *606 various exhibits that were to be filed and the time frame within which the parties' actions occurred.[1] No testimony was taken and the matter was continued to a date several months later.
Between the first day and second days of the appeal hearing, Director Adams sent Bruno another letter, dated June 9, 2003. Adams stated she was writing "to clarify some of the questions that arose at the May 27, 2003 hearing" on Bruno's appeal. Specifically, the letter stated:
On January 8, 2003, I was in a meeting regarding concerns about your failure to perform your assigned job duties. During that meeting and in my presence, you ... repeatedly shouted at your supervisor in a most disrespectful fashion. There was no provocation for your insubordinate and inappropriate behavior. These disrespectful and insubordinate actions are in violation of Jefferson Parish Employee Regulations of Conduct 7.03. [Italics in original.]
On October 31, 2002, a meeting was scheduled for Youngblood[2] to use the East Bank Regional meeting room. Approximately two (2) weeks prior to that scheduled meeting, you were advised by Youngblood to cancel the meeting because they no longer needed the room. Nevertheless, you failed to notify the Maintenance Department of the cancellation. Notification is part of your job responsibilities. Because of this failure, the Library Department incurred an unnecessary expense of department funds in the amount of $16.00. This fee is normally paid by the meeting room user.
On November 8, 2002, a meeting was scheduled by the Chamber of Commerce. After the two Maintenance Department employees spent two hours setting up the room for the scheduled meeting, you told your supervisor that the group had previously cancelled and that you failed to notify the Maintenance Department. Notification is part of your job responsibilities. Because of your failure, the Library Department incurred unnecessary expenses amounting to four hours of paid time.
You were assigned by your supervisor to make a presentation on January 14, 2003. Without notifying anyone that you would be unavailable to conduct the presentation, you went on leave. Failing to advise your supervisor of your unavailability without any justifiable notice is unacceptable and constitutes disregard for your job responsibilities.
For all of the above reasons, insubordination on January 8, 2003, failure to notify the Maintenance Department of a meeting cancellation of 10/31/2002, failure to notify Maintenance Department of a meeting cancellation of 11/8/2002 and your failure to notify your supervisor of your inability to conduct a presentation on January 14, 2003, I suspended you for 5.5 days. My action in imposing this suspension was not based on any factors or criteria, which is not disclosed in this letter.
The next hearing day was September 24, 2003. Four witnesses testified: Bruno; maintenance employee Brian Baudoin; Adams; and Baptiste. The third hearing day was November 7, 2003; more testimony *607 was adduced from Baptiste, Bruno, and Baudoin.
On December 31, 2003 the hearing examiner/referee issued a decision that concluded:
The Appointing Authority proved that Janice Bruno did not properly cancel the meetings known as Youngblood and Chamber of Commerce (October 31, 2002 and November 8, 2002). The Appointing Authority did not prove that Janice Bruno violated any set of norms in her January 8, 2003 meeting with her supervisor and the Director. The tone of voice and actions as represented and demonstrated by the Supervisor were not such as would allow for discipline. The Appointing Authority did not prove that Janice Bruno acted improperly on January 14, 2003. She returned from the doctor and was told she needed to take ten (10) days or so emergency leave, it was granted by the Director. If it was granted it is presumed it was warranted. To miss a training meeting with two (2) people whose office is within twenty (20') feet of hers and who missed no time from work is not grounds for discipline after having been told by her doctor she needed emergency leave.
However, the violations proved do support a 5.5 day suspension.
Accordingly, the hearing examiner/referee dismissed Bruno's appeal.[3]
On appeal to this Court, Bruno makes the following assignments of error, which we reproduce verbatim:
A. Permitting the June 9, 2003 addendum to the February 3, 2003 letter of discipline to be entered into evidence to consider and determine the merits of the appeal of the suspension imposed by the February 3, 2003 letter of discipline.
B. The decision and order of the hearing examiner/referee is legally and factually in error. To sustain a 5.5 day suspension on the basis of the October 31, 2002 and November 8, 2002 charges of failing to properly cancel a meeting when the appointing authority admitted that these acts only warranted a letter of reprimand and additional acts, were such to occur, would justify more severe disciplinary actions. When the hearing examiner/referee correctly found that additional acts allegedly committed by Ms. Bruno on January 8, 2003 (shouting) and January 14, 2003 (failing to make a presentation) were without merit, he legally and factually had to sustain Ms. Bruno's appeal and rescind the 5.5 day suspension and reinstate her pay.

STANDARD OF REVIEW
The Jefferson Parish home rule charter establishes the Jefferson Parish Personnel Board and provides that it shall be "policy-making and quasi-judicial in nature." Jefferson Parish Charter, Art. 4, Section 4.03(C). The Personnel Board has the exclusive power and authority to hear and decide all disciplinary cases. Jefferson Parish Personnel Rules, Rule II, Section 7. Regular employees in the classified service have the right to appeal to the Board from suspension and other disciplinary actions to test the reasonableness of such action. Jefferson Parish Personnel Rules, Rule II, Section 4.1.
*608 The burden of proof on appeal as to the facts shall be on the appointing authority. Id.; Jefferson Parish Personnel Rules, Rule II, Section 4.6; Jefferson Parish Personnel Board Rules of Appeal Procedure, Rule 9(c).
[T]he charges expressed in writing by the appointing authority as cause for ... suspension, ... or other action, shall not be accepted as prima facie true. Evidence shall not be received from an appointing authority to supplement or enlarge the charges contained in such written document. The appellant may rebut any proof offered by the appointing authority in support of the charges.
Jefferson Parish Personnel Board Rules of Appeal Procedure, Rule 9(m).
Further, neither party is permitted "to introduce evidence, parol or written, the effect of which would be, if admitted, to enlarge the pleadings." Jefferson Parish Personnel Board Rules of Appeal Procedure, Rule 9(t). Final decisions of the Board shall be subject to review on any question of law or fact upon appeal to this Court. Jefferson Parish Personnel Rules, Rule II, Section 7.1; Jefferson Parish Personnel Board Rules of Appeal Procedure, Rule 30.
Upon a board's review of a discharge or disciplinary action against a public employee, the appointing authority bears the burden of proving legal cause. Lewis v. Jefferson Parish Dept. of Public Works, 99-16 (La.App. 5 Cir. 5/19/99), 761 So.2d 558, writ denied, 99-2906 (La.1/14/00), 753 So.2d 215. Legal cause for disciplinary action exists if the facts found by the civil service commission or personnel board disclose that the conduct of the employee impairs the efficiency of the public service. Adams v. Jefferson Parish Dept. of Community Action Programs, 02-1090 (La.App. 5 Cir. 4/29/03), 845 So.2d 1147, 1150.
The Personnel Board has a duty to decide, independently from the facts presented, whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Wilson v. Jefferson Parish, 95-470 (La.App. 5 Cir. 1/17/96), 668 So.2d 1167, writ denied, 96-0413 (La.4/19/96), 671 So.2d 927.
On review by an appellate court, a civil service board's findings of fact are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. Moore v. Ware, 01-3341 (La.2/25/03), 839 So.2d 940, 946.

LETTER OF JUNE 9, 2003
In this assignment, Bruno asserts that the hearing examiner/referee erred in allowing the Library to use the letter of June 9, 2003 as the basis of the appeal. Bruno contends that the letter seeks to use the prior punishment of November 12, 2002 as the basis for the proposed 5.5 day suspension. She argues that the letter, in effect, amended the disciplinary letter issued on February 3, 2003 and, thus, that it retroactively changed the reasons for Bruno's suspension to specifically include the October 31, 2002 and November 8, 2002 scheduling errors, for which she had already been reprimanded in the letter of November 12, 2002.
After Bruno's counsel objected to admission of the June 9, 2003 letter at the September 24, 2003 hearing, the hearing examiner ruled it was admissible because "everything that's in this document was in the previous document, in some form, or in some place."
*609 We find no error in admission of the June 9, 2003 letter. There is nothing in it that was previously unknown to Bruno; further, the original notice of suspension on February 3, 2003 incorporated by reference documents relating to the infractions that were set out in the June 9th letter.

GROUNDS FOR SUSPENSION
In her second assignment, Bruno argues that the hearing examiner/referee erred in upholding the 5.5 day suspension after finding no basis for the allegations of the infractions on January 8, 2003 and January 14, 2003.[4] Because she was previously reprimanded for the incidents of October 31, 2002 and November 8, 2002, she asserts that the appointing authority could take no additional disciplinary action against her for the two meeting cancellation failures.
The Library contends that the written reprimand given to Bruno by her supervisor, Joan Baptiste, for the October 31/November 8, 2002 incidents, was not an action by the appointing authority, because Baptiste is Bruno's immediate supervisor, but she is not the appointing authority. Rather, Joan Adams, the library director, is the appointing authority.
The Library asserts that the letter of reprimand issued by Baptiste is null and void because it was not issued by the appointing authority, so it cannot preclude disciplinary action by the appointing authority. The Library argues that to find otherwise "would mean that a first level supervisor could decide to issue a written reprimand for a very serious offense, and the appointing authority would be precluded from taking more serious disciplinary action."
Where an appointing authority has disciplined an employee for an infraction, the appointing authority is estopped from seeking at a later date to revive this incident as ground for further disciplinary measures. Department of Public Safety, Office of State Police v. Rigby, 401 So.2d 1017, 1020 (La.App. 1 Cir.1981), writ denied, 406 So.2d 626 (La.1981).
Disciplinary action must be taken by the proper appointing authority or it is null and must be set aside. Pellitteri v. Orleans Levee Dist., 633 So.2d 615, 616 (La.App. 1 Cir.1993), writ denied, 94-255 (La.3/18/94), 634 So.2d 861. The requirement that the disciplinary action come from the appointing authority is to be strictly construed. Id.
The question is whether Baptiste's action, as supervisor, in issuing a reprimand must be construed as an act of the appointing authority.
Jefferson Parish Personnel Rules, Rule X, Section 1.1, provides:
When a regular employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory manner, or has committed any act to the prejudice of the service, or has neglected to perform any act it was his duty to perform, or otherwise has become subject to corrective action ..., the appointing authority shall take action warranted by the circumstances in order to maintain standards of effective service. [Emphasis added.]
Jefferson Parish Personnel Rules, Rule I, Section 1, 4, defines "appointing authority" as "any agency, board, commission, officer, official, or other individual duly empowered to make appointments to *610 positions in the Parish classified service." Under this definition, it is clear that Baptiste is not the appointing authority for the Library Department. Rather, Library Director Adams is the appointing authority.
Absent some evidence that Director Adams officially delegated her powers as appointing authority to Business Manager Baptiste, we conclude that Baptiste's reprimand to Bruno cannot be construed as a disciplinary action by the appointing authority, because Baptiste was not the appointing authority.[5]
Accordingly, we find no manifest error in the Personnel Board's determination that Bruno's suspension was supported by the incidents in which Bruno failed to properly cancel meetings on October 31, 2002 and November 8, 2002. Nor do we find the Board's determination was arbitrary, capricious or an abuse of discretion.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
GOTHARD, J., dissents.
GOTHARD, J., dissents.
I dissent from the majority opinion and would reverse the trial court's judgment. I disagree with the majority finding that the written reprimand by Ms. Bruno's supervisor, Ms. Baptiste, for the incidents of October 31, 2002 and November 8, 2002, cannot be construed as a disciplinary action by the appointing authority because is was not written by Joan Adams. Ms. Adams received a copy of the written memorandum and testified at trial that she disciplined Ms. Bruno as a result of four incidents, two of which are the incidents above. Ms. Adams testified that Ms. Bruno was suspended as a result of four incidents: October 31, 2002, November 8, 2002, January 8, 2003, and January 14, 2003. The main reason for the suspension was insubordination for failure to notify the maintenance department or immediate supervisor of cancellations (occurring on October 31, 2002 and November 8, 2002). Ms. Adams explained that at a pre-disciplinary hearing Ms. Bruno did not offer any documents in her defense, nor did she offer any explanation as to why she failed to notify either the maintenance department or her supervisor of the cancellations.
The third incident used as a basis for the disciplinary action resulted from Ms. Bruno's behavior at a meeting on January 8, 2003. Ms. Adams stated that she called the January 8, 2003 meeting with Ms. Bruno and Ms. Baptiste to clarify problems the library was having with Ms. Bruno's job performance. One of the problems discussed at the meeting was Ms. Bruno's apparent misunderstanding of the difference between a "fee" and a "deposit." Ms. Adams stated that as a result of misinformation imparted by Ms. Bruno, one of the patrons called to complain he was being charged a fee for damage. When Ms. Baptiste tried to explain the difference between a damage deposit and a damage fee, Ms. Bruno became argumentative. She stopped listening and interrupted Ms. Baptiste's explanation. Ms. Bruno began yelling and "got louder and louder." Ms. Bruno began shouting at her supervisor Ms. Baptiste, banged her fist on the table and made statements like, "you mean you're not going to back me up?" Finally, *611 Ms. Baptiste said, "I don't have to take this," and the meeting ended. Ms. Baptiste stated that many changes had taken place over the year before these incidents and Ms. Bruno had been opposed to many of the changes. Ms. Baptiste characterized Ms. Bruno's perception of the changes and her resistance to them as a "turf war."
The final incident occurred on January 14, 2003. Ms. Bruno was scheduled to give a presentation at 1:00 p.m. on January 14, 2003 to train another employee in the use of a new meeting room computer system. Ms. Baptiste notified Ms. Bruno of the presentation the day before by e-mail. However, Ms. Bruno submitted a leave slip requesting 15 minutes added to her lunch hour because of a doctor's appointment. That request was granted and Ms. Bruno returned with the required note from her doctor verifying the need for the leave request. However, she did not notify anyone that she would be unable to conduct the presentation.
After considering all of the evidence presented to it, the board concluded that the last two of the four accusations did not warrant punishment. Nevertheless, the board rendered judgment affirming the 5.5 day suspension, ultimately concluding that violations of the existing rules supported the suspension. The board concluded that the appointing authority met its burden of proof to show that Ms. Bruno failed to cancel the meetings on October 31, 2002 and November 8, 2002. However, the board disagreed with the appointing authority on the accusation that Ms. Bruno shouted at her supervisor in a meeting or that she failed to properly cancel the presentation of January 14, 2003.
I find the trial court was correct in its finding that the appointing authority did not prove Ms. Bruno's behavior on January 8th and 14th warranted disciplinary action. An appellate court review of an administrative disciplinary decision is limited to a determination of whether the decision was made in good faith for legal cause; unless the record contains insufficient evidence to support the administrative decision or shows that the decision was clearly wrong, the decision must be affirmed. Adams v. Jefferson Commun. Action Programs, supra, 845 So.2d at 1150. Our standard of review is the clearly wrong/manifest error standard. Id.
La. Const. Art. 10 Sec. 8(A) protects the positions of civil service employee from disciplinary actions taken without cause. "Cause" in this context is synonymous with legal cause. Lewis v. Jefferson Parish Dept. of Public Works, 99-16 (La.App. 5 Cir 5/19/99), 761 So.2d 558, writ denied, 99-2906 (La.1/14/00), 753 So.2d 215. Legal cause for disciplinary action exists if the facts found by the hearing officer show that the employee's conduct impaired the efficiency of the public service. Ruddock v. Jefferson Parish Fire Civil Service Bd., 96-831 (La.App. 5 Cir.1/28/97), 688 So.2d 112. The hearing officer's mandate is to decide, de novo from the facts presented, whether the appointing authority has good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. La. R.S. 33:2561, Adams v. Jefferson Commun. Action Programs, supra.
As to the incident of screaming at her supervisor in the January 8th meeting, the hearing officer clearly found that while Ms. Bruno raised her voice at the meeting it was not tantamount to insubordination. Specifically the hearing officer stated:
The Appointing Authority did not prove that Janice Bruno violated any set of norms in her January 8, 2003 meeting with her supervisor and the Director. The tone of voice and actions as represented and demonstrated by the Supervisor *612 were not such as would allow for discipline.
Of the January 14th failure to give a scheduled presentation, the hearing officer stated:
To miss a training meeting with (2) people whose office is within twenty (20') feet of hers and who missed no time from work is not grounds for discipline after having been told by her doctor she needed emergency leave.
I agree with the majority in its finding that Ms. Bruno's first assignment of error regarding the June 9, 2003 letter has no merit. However, I disagree that the second assignment of error is also without merit. In that assignment, Ms. Bruno argues the hearing officer erred in upholding the 5.5 day suspension after finding no basis for the allegations of the infractions on January 8th and January 14th.
It is clear from the record that on November 12, 2002, Ms. Bruno was formally reprimanded for the violation of policy by failing to cancel meetings scheduled for October 31st and November 8th. That document contains the following pertinent language:
These incidents of failure to follow procedures has (sic) caused lost (sic) of time and money for the Library Department. The new procedures for booking meetings are no excuse for not following through to inform the maintenance department of any changes to the meeting room schedule. Let this letter stand as a written reprimand, and first warning that these incidents must not continue. If any other incidents of this nature occur during the next quarter, further disciplinary action may be taken.
Ms. Bruno reasons that, given the finding by the hearing officer that since the incidents used as "further incidents" referenced in the above letter were not grounds for disciplinary action, no additional disciplinary action can be taken for the two failures to cancel meetings.
The appointing authority counters that position by arguing that since the November 12th letter was written by Ms. Baptiste, a first level supervisor, and not Ms. Adams, the director, it does not preclude the appointing authority from taking subsequent and more serious disciplinary action. Thus, it reasons that the appointing authority's suspension can stand on those two infractions alone, irrespective of the finding that the two additional alleged infractions of the rules were unproven.
While I do not disagree with the appointing authority's assertion, and the majority opinion's ruling that only the appointing authority alone has the authority to discipline a classified worker and that Ms. Baptiste is not the appointing authority, I disagree that the original two infractions can stand independently to support the suspension in this case. An employee cannot be twice disciplined for a single dereliction. Once an employee is disciplined for an infraction, the appointing authority is estopped from seeking at a later date to revive the incident as ground for further disciplinary action. Lundy v. University of New Orleans, 98-04 (La.App. 1 Cir. 2/19/99), 728 So.2d 927, 929, and cases cited therein.
Ms. Baptiste's notice of November 12, 2002 was copied to Ms. Adams, who is the appointing authority. Ms. Adams had full knowledge of the incidents, the reprimand and the warning. She had the option, and the authority, to take additional disciplinary steps at that time. She opted instead to accept Ms. Baptiste's reprimand and clearly intended to do nothing more until the meeting on January 8, 2003, when she considered Ms. Bruno's actions at a meeting about the difference between a deposit and a fee, and subsequent notification that *613 Ms. Bruno did not attend a presentation set for January 14th. Ms. Adams' testimony and the documentary records show that Ms. Adams suspended Ms. Bruno for her insubordination at the meeting on January 8, 2003, and her failure to properly cancel the presentation on January 14, 2003, as well as the original two infractions.
When reading the February 3rd notice and the subsequent addendum together, we find that the incidents of failing to cancel meetings, infractions for which Ms. Bruno had already been reprimanded two months earlier, were used to support the theory that she had been reprimanded and warned earlier but continued to disobey procedures.
The February 3rd letter discusses all four incidents, and acknowledges the November 12th letter of reprimand and first warning. It continues to outline subsequent infractions and concludes that Ms. Bruno's actions warrant suspension because of the January 8th and January 14th incidents and her "continued defiance of library procedures." The letter further states, "This is a final warning that continuing your inappropriate behavior and failure to follow this directive of failure to follow the instructions of any supervisor will result in swift and severe disciplinary action, including dismissal."
I believe the clear intention of the appointing authority was to accept the initial reprimand and warning, and to use it as support for the appointing authority's assertion that the second two incidents warranted a suspension and final warning before termination. I believe this is within its authority. While it is clear that prior reprimands may not be used a second time as grounds for legal cause for future disciplinary actions, they may be considered along with new grounds to determine whether there is legal cause for the disciplinary actions taken. Adams v. Jefferson Commun. Action Programs, 02-1090 (La.App. 5 Cir. 4/29/03), 845 So.2d 1147, 1151. I believe the clear intent of the appointing authority was to show that Ms. Bruno had violated procedures before and was formally reprimanded and warned, but despite the reprimand and warning, continued to violate policies.
Had the second two violations, on January 8th and 14th been proven, the suspension would have been justified. However in this case, the hearing officer found the appointing authority failed in its burden of proof to show that Ms. Bruno continued to violate procedures. I do not believe that if the last two infractions had been proven, this Court would accept a defense argument that the original two were not valid because the written reprimand was not issued by the appointing authority. I believe the hearing officer erred in upholding the suspension after finding the last two infractions were unproven.
NOTES
[1] The Jefferson Parish Personnel Board Rules of Appeal Procedure, rule 11(a), provide that the Board may appoint a referee to hear and decide any appeal pending before the Board.
[2] The parties' memos, letters, and testimony refer to "Youngblood," but the group is listed as "Youngblood E-Commerce" on the Meeting Room Facility Reservation form in the exhibits.
[3] Pursuant to Jefferson Parish Personnel Board Rules of Appeal Procedure, Rule 11(d), "The decision of a referee shall become the final decision of the Board on the date that the referee's decision is filed with the Director unless an application for review of the referee's decision is filed...."
[4] The Library did not appeal the portion of the hearing examiner/referee's ruling that found no merit to the charges of insubordination on January 8, 2003 and failure to follow procedures regarding sick leave on January 14, 2003. Hence, the factual finding as to those incidents cannot be reversed adversely to the appellant-employee, Bruno.
[5] Other cases have held that an appointing authority may delegate its powers either by express written authorization, Pellitteri v. Orleans Levee Dist., supra, or by implied delegation, when there is sufficient evidence of past practices and customs over time which show that the appointing authority intended to delegate that authority to another, Dept. of Agriculture and Forestry v. Jones, 93 0128 (La.App. 1 Cir. 3/11/94), 633 So.2d 900, 903.