958 So.2d 1 (2007)
Albert A. BECKER
v.
JEFFERSON PARISH DEPARTMENT OF PARKS & RECREATION.
No. 07-CA-19.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
Russell L. Breckenridge, Amite, Louisiana, for Plaintiff/Appellee.
*2 Clement P. Donelon, Metairie, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
CLARENCE E. McMANUS, Judge.
Defendant, Jefferson Parish Department of Parks & Recreation (hereinafter "Department"), appeals a judgment of the Personnel Board for the Parish of Jefferson (hereinafter "Personnel Board") which upheld the hearing officer's determination reversing plaintiff's termination and reinstating his employment.
The record reflects that, on December 20, 2005, Mr. Becker was employed by the Jefferson Parish Department of Parks & Recreation. He was one of the employees selected to undergo a random drug test. Mr. Becker did not take the test, because he went home sick. After a Pre-Disciplinary Hearing on December 28, 2005, Mr. Becker was terminated from employment for violating the Department's Substance Abuse Policy.
Mr. Becker appealed his termination decision and the Hearing Officer for the Jefferson Parish Personnel Board granted his appeal. The Hearing Officer ordered that Mr. Becker's employment be reinstated after a seven month suspension without pay, and monthly drug tests, not random, for the next twelve months.
The Department appealed from the Hearing Officer's decision, and the Personnel Board sustained the decision reinstating Mr. Becker, after amending the decision to eliminate his suspension and the authority to order further drug tests on a nonrandom basis. The Department now appeals to this Court.
In a brief to this Court, the Department argues that the Hearing Officer and the Personnel Board abused their discretion by substituting their judgment for that of the Appointing Authority and the Jefferson Parish Council. The Department further argues that the Personnel Board committed reversible legal error by amending the Hearing Officer's judgment in favor of Mr. Becker in the absence of an appeal by Mr. Becker.
A civil service employee is afforded protection in disciplinary actions, taken without cause, pursuant to La. Const. Art. 10 Sec. 8(A). Adams v. Jefferson Parish Department of Community Action Programs, 02-1090 (La.App. 5 Cir. 4/29/2003), 845 So.2d 1147; Lewis v. Jefferson Parish Dept. of Public Works, 99-16 (La.App. 5 Cir. 5/19/99), 761 So.2d 558, writ denied, 99-2906 (La.1/14/00), 753 So.2d 215. A dismissal of a civil servant "for cause" is synonymous with legal cause. Adams, supra; Lewis, supra. Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service. Bruno v. Jefferson Parish Library Dept., 04-504 (La.App. 5 Cir. 11/30/04), 890 So.2d 604. Adams, supra.
A public employee may apply to the Board for a review of discharge or disciplinary action, at which time the appointing authority bears the burden of proving legal cause. Adams, supra. The Personnel Board has a duty to decide, independently from the facts presented, whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. La. R.S. 33:2561, Bruno, supra.
On appeal, this Court should apply the clearly wrong or manifest error rule. Adams, supra. An appellate court review of an administrative disciplinary decision *3 is limited to a determination of whether the decision was made in good faith for legal cause; unless the record contains insufficient evidence to support the administrative decision or shows that the decision was clearly wrong, the decision must be affirmed. Adams, supra.
Several witnesses testified at the hearing on this matter. Mr. Becker testified that he had been an employee of the Department for twenty-three and one-half years. He had taken drug tests on several occasions in connection with his employment and had passed each one. On December 20, 2005, he was employed by the Department as a Foreman I. His duties were to oversee work crews in beginning and ending tasks, including building and field maintenance. His place of assignment was at the warehouse on Saints Drive, and from there he would report to various locations around Jefferson Parish. As part of his employment, he was required to undergo random drug screenings as provided in the Jefferson Parish Substance Abuse Policy, and had undergone several tests during his employment. Prior to this date, he had never refused a drug test. He had been provided with a copy of the Substance Abuse Policy, and was aware of the provisions of that policy. Mr. Becker also testified that he was a diabetic.
On December 20th, he reported to work at Saints Drive. About 45 minutes later, he went to Wally Pontiff Playground with his crew, Maverick Charles and David Swilley, to pick up a piece of equipment (a kiln). Becker testified that he began to feel unwell, with symptoms of dizziness and light headedness, the shakes, and paling of his complexion. He asked one of his crew to drive, but they thought he was kidding, so he drove the parish owned work truck. When the three arrived, there were several other Department employees present at the playground. Becker ordered his crew to "go get that thing", while he tested his blood sugar, which was high.
Becker's supervisor, Herbert Robinson arrived at that time, and told them that he was there to pick up three employees, including Becker, for a drug test. Becker told Robinson that he felt ill, and Robinson stated that if he was sick he should go home. Robinson repeated himself and then said that he would call his supervisor, Scott Muhoberac. Robinson contacted Muhoberac by radio, and Becker informed Muhoberac that he felt ill, and was getting ready to go home, to which Muhoberac replied, "Whatever." Becker interpreted this as permission to go home, which he did. Although Maverick Charles drove him (Becker) from Pontiff Playground to Saints Drive, Becker admitted that he drove himself home from Saints Drive.
When asked whether he told Mr. Robinson that he was concerned about taking the test because his wife smoked, Becker replied no. Becker further testified that he was not concerned about testing positive, and that he did not consider his actions in going home sick as a refusal to take the drug test. He went home because he feared that he would "pass out." He further stated that he was never told that if he did not take the drug test, he would be fired. After he got home, he received calls from fellow employees warning him that he was going to get fired, so he attempted to call Muhoberac, but he was unable to reach him. He also unsuccessfully attempted to call Fran Robichaux, the supervisor of the drug testing program.
Hebert Robinson testified that he was employed by the Department as Foreman II, and that while they both reported to Sam Wiley, he did not have the authority to excuse Becker from the drug test, and *4 that he did not tell Becker that he did not have to take the test. On the date in question, he arrived at Pontiff Playground before Becker, and the other two men. He told Becker and the other two men that they had to take a drug test, and Becker told him that he could not, because he had been around people who smoked, namely his wife. Becker then told him he was going home, and he told Becker that he had to call Scott (Muhoberac). Robinson then raised Muhoberac on his radio, and gave the radio to Becker. Robinson denied telling Becker that he should go home, and that he (Robinson) had no knowledge of Becker's felling badly or sick. Robinson said that after Becker talked to Muhoberac, he then told him he could not take the test because he was ill. Robinson told Maverick to take Becker home because Becker said he was sick. Robinson admitted that when he wrote his statement of events shortly after, he did not mention Becker's statement that he could not take the test because he was around his wife, who smoked.
Scott Muhoberac testified that he was an Area Coordinator, responsible for overseeing the maintenance and supervisors of the playgrounds and fields in the Eastbank area. He receives the orders for the drug tests, which he then passes on to the appropriate supervisor. He does not have the authority to excuse anyone from taking the drug test. On December 20th, he passed the order for Becker's test to Robinson, who was in charge in Sam Wiley's absence. Later, he received a radio call from Becker, telling him that he (Becker) was going home sick. Muhoberac asked Becker if he was serious, and Becker said he was going home. Believing that Becker was joking, he replied "Whatever." Several minutes later, he called Robinson, who told him that Becker had left. Muhoberac made several attempts to reach Becker, but was unsuccessful. He further testified that Robinson never said anything to him about Becker refusing to take the test because he was around people who smoked. Muhoberac also spoke with Fran Robichaux, who told him that if he got in touch with Becker, to have Becker contact her.
Kevin Aucoin testified that he was the Eastbank Administrator for the Department, responsible for overseeing all the day-to-day operations of the Eastbank. He was the Eastbank contact person for the Substance Abuse Policy. (There are three divisions in the Department, namely the Westbank division the Eastbank division and Lafreniere Park.) When the random drug test comes up, Fran Robichaux notifies all three contact people and each is responsible for notifying the appropriate persons. The only time a drug test is cancelled is when someone is out that day. Only Ms. Robichaux can give permission to not take the test.
When Aucoin got the notice for Becker's drug test, he forwarded it to Muhoberac. It was Muhoberac's duty to pass the order along to the immediate supervisor, who in this case was Robinson (acting as a supervisor since Wiley was absent.) He did not receive a call from Becker on the date in question. He did receive a call from Muhoberac, who told him that he talked to Ms. Robichaux, and also tried to call Becker after he left.
Fran Robichaux testified that she was the Substance Abuse Program Manager for the Human Resources Department of Jefferson Parish. It was her responsibility to oversee the drug testing program. There are training programs covering the ramifications of not taking the drug test that the supervisors are required to attend. According to Ms. Robichaux, the policy provides that if someone does not go for drug testing when directed, he is subject *5 to disciplinary action up to and including discharge. The personnel rules provide that failure to take the test results in termination of employment.
Ms. Robichaux stated that the order for the random drug test originated with her. On that date, she was informed that Becker had gone home sick, and did not show up for the test. She did not authorize him to be excused from the test. Furthermore, Becker's supervisors did not have the authority to excuse him from taking the test. To her knowledge, no one had ever appealed from a termination of employment for failure to take the test before Becker. Ms. Robichaux stated that the ability of an employee to be able to go home alleging that he felt sick would affect the substance abuse policy.
Michael Millican testified that he worked for the Department. He was present at Saints Drive on the morning of December 20th, and was one of the men sent to Pontiff Playground. While at Saints Drive., he noticed that Becker was very pale. Millican drove his own vehicle to Pontiff Playground, and when he got there he saw Becker checking his blood sugar. Robinson came to pick Millican up, along with Becker and Swilley, for the drug test. Robinson told Becker that he looked ill, and he told Becker three times that if he didn't feel well he needed to go home. Becker asked about the drug test and Robinson said that he would call Muhoberac. After Becker talked to Muhoberac, Becker walked back to the truck, and then Maverick drove him back to Saints Drive. Millican testified that he never heard Becker say anything about his wife smoking.
Anthony Corpora testified that he was employed by the Department and he was at Pontiff Playground on December 20th. When Becker got to the playground he checked his sugar level. His mouth was shaking, his complexion was pale and he didn't look like his normal self. Corpora heard Robinson tell Becker three times that if he was sick he should go home. One of those three times was in response to Becker's inquiry about the drug test. Robinson also told Becker to call Scott (Muhoberac).
The statements given by David Swilley and Maverick Charles were introduced into evidence at the hearing. Mr. Swilley, in his statement dated December 28, 2005, said that at Saints Drive Becker told him and Maverick that he was not feeling well, and he asked Maverick to drive. They thought he was joking, and told him no. At Pontiff Playground, Becker again told them that he did not feel well. Robinson arrived and told him (Swilley), Becker and Millican that they were being called for the drug test. Then Robinson stated that Becker did not look well, and Becker replied he did not feel well. Robinson told Becker he should go home. Robinson called Scott (Muhoberac) on the radio, and then handed the radio to Becker.
Maverick Charles, in his statement dated January 18, stated that Becker told him he was not feeling well, but he (Maverick) thought he was joking. When they arrived at Pontiff Playground, Maverick saw that Becker had turned pale. He heard Robinson tell Becker that he needed to go home, and then Robinson told him to take Becker to his car.
After the conclusion of testimony, the matter was left open for the introduction of medical records, which were used by the Hearing Officer solely to determine that Mr. Becker did have diabetes.
The Hearing Officer found that Becker had no advance notice of the drug test, and that Becker had diabetes on the date in question. Prior to notice of the drug test, he appeared ill and tested his blood, and *6 then announced that the test was not within the normal limits. Becker asked for permission to go home sick, and received an answer from a second level supervisor that could be perceived as permission to go home. The Hearing Officer then concluded that
Albert A. Becker went home after becoming ill. He appeared ill before he was notified of a drug test. He was authorized to go home by someone who had no real authority to given (sic) him permission and he should have known that his second level supervisor lacked the authority to grant his sick leave request. He must bear some of the responsibility for leaving prior to taking the test.
The Hearing Officer granted Becker's appeal, and ordered him to resume his duties on July 31, 2006, after a seven month suspension without pay. The Hearing Officer further authorized the Appointing Authority to order a drug test of Becker once a month for the next twelve months, not on a random basis.
The Department requested the Board review the decision. After reviewing the record and hearing the argument of counsel, the Board sustained the Hearing Officer's ruling, after amending the ruling to eliminate the suspension and the Parish's authority to order further drug tests on a non random basis, and ordered that Becker's reinstatement be retroactive to December 30, 2005.
In this appeal, the Department alleges that the Hearing Officer and the Personnel Board abused their discretion by substituting their judgment for that of the Department. The Department further argues that the Personnel Board committed error by amending the Hearing Officer's judgment in favor of Becker even though Becker did not file an appeal.
The evidence presented showed that plaintiff was ill on the date in question, that he told fellow employees of his illness prior to being informed that he was to take the drug test, and that he went home after being told to do so by his supervisor. The evidence further shows that plaintiff was unaware that his supervisor did not have the authority to send him home once he was scheduled to take the drug test. Furthermore, it appears that the Hearing Officer and Personnel Board found credible plaintiff's testimony that, had he known that he could not be excused from the test, he would have taken it despite his illness. The Hearing Officer, and the Personnel Board, could have determined that the plaintiff went home because he was sick, and not for the purpose of avoiding the drug test, and therefore there was no legal cause for terminating plaintiffs employment, as his conduct in going home did not impair the efficiency of the public service. Based on the record before us, we cannot say that the Personnel Board was manifestly erroneous or clearly wrong in sustaining the decision of the Hearing Officer reinstating plaintiff's employment.
Appellant also alleges that the Personnel Board erred in eliminating plaintiff's seven month suspension, because plaintiff did not appeal from the Hearing Officer's decision. However, Rule II, Section 7.1 of the Jefferson Parish personnel Rules provides in part that
The decision of a referee is subject to review by the Board on any question of law or fact upon the filing of an application for review with the Board within fifteen calendar days after the decision of the referee is rendered.
This rule allows for the review of any issue, not just those raised in the request for review. The Jefferson Parish Personnel Board was charged with the duty of reviewing this case to determine if the *7 Department had good or legal cause for discharging plaintiff and if plaintiff's punishment was commensurate with his dereliction. Bruno v. Jefferson Parish Library Dept., supra. The Board reviewed the record and found that plaintiff committed no action which warranted discipline. Our review finds no manifest error in this determination.
Finally, in plaintiff/appellee's brief to this Court, plaintiff requests attorney fees. We find no basis to award attorney fees in this matter.
Accordingly, we affirm the decision of the Jefferson Parish Personnel Board, reinstating plaintiff's employment retroactive to the date of December 30, 2005. All costs of this appeal are assessed against appellant.
AFFIRMED.