MARC E. JOHNSON, Judge.
 

 | .¿The Plaintiffs, Michael Stamps, Glenn Miller, Michael Chauvin, Billie Hartline and Randolph Doucet, appeal their suspensions without pay for violating the Jefferson Parish Workplace Harassment Policy, No. 2.02 (the harassment policy).
 
 [1]
 

 The Plaintiffs were suspended in November of 2007 as a result of displaying certain items in the office of the Jefferson Parish Department of Public Works-Sewerage (the Department) that were alleged to be of such a nature as to harass, harm, or offend the public and/or other employees. The items displayed were:
 

 1)A large white rope with a knot and a running loop (rope).
 

 2) A black whip (whip).
 

 3) A sign that read: “Bill’s Whipping Post” (sign).
 

 4) A dart board with a picture of a man holding a large yellow fin tuna.
 

 5) A kicking device which was operated by pulling a rope which had a loop at the end of the rope.
 

 Each of the Plaintiffs worked for the Parish of Jefferson in some capacity for over 20 years. During a period from six to fifteen years, the objectionable items were on display in the Department’s office. All of the Plaintiffs were aware that |sthe items were plainly visible to anyone who entered, and all were in supervisory positions during all or part of that time period.
 
 [2]
 

 In addition, the objects remained on display throughout a period of exacerbated racial tensions in Louisiana resulting from an incident in which three nooses were hung from a tree outside a high school in Jena, Louisiana. The Jena incident was the focus of national media attention during the summer and fall of 2007. Nevertheless, none of the Plaintiffs took any steps to have the objects in the Department removed.
 

 None of the items in question were owned and/or placed in the office by any of the Plaintiffs. Although the office was visited over the years by other Jefferson Parish employees, supervisors, members of
 
 *22
 
 the administration, and the public, no one was instructed to remove the items from the workplace, no one ever complained about any of the items, and no one was warned that any of the respective items may be considered to be offensive by either a Jefferson Parish employee or member of the public.
 

 In November of 2007, Terrance Lee filed a civil rights complaint of racial discrimination with the Federal Bureau of Investigation (FBI) regarding the five objects displayed in the Department. Lee had worked around the items and was aware of them existence for a number of years. In addition, Lee often filed grievances and/or complaints, and he took pictures of the items eighteen months prior to making his first complaint. He lodged the complaint after he was disciplined for other reasons.
 

 |4The Jefferson Parish Administration and the Jefferson Parish Department of Human Resource Management first learned that the five objects were on display in the Department’s office on November 7, 2007 following the complaint made by Lee. At that time, the Parish Administration immediately ordered the objects to be removed.
 

 On November 13, 2007, the Parish President appointed Tim Whitmer, Chief Administrative Assistant, to investigate the complaint filed by Lee and to serve as the Appointing Authority in regard to any disciplinary actions that needed to be taken as a result of Lee’s complaints of racial discrimination in the Department. Whit-mer asked the Chief Administrative Assistant, Darryl Ward, an African-American, to conduct the investigation. He commenced by going to the location where the objects were located, and later interviewing fifty-two past and present employees of the Department.
 

 After the completion of that investigation and after conducting a pre-disciplinary hearing with each Plaintiff, Whitmer issued a Letter of Discipline (LOD) to the Plaintiffs. Whitmer found that the Plaintiffs ■violated the harassment policy and the Jefferson Parish Employee Regulations of Conduct (ROC). He found that the Plaintiffs,
 
 inter alia,
 
 allowed the five objects to remain on display for an extended period of time; failed to take appropriate steps to either remove the objects, or have the objects removed; failed to assist in the maintenance of a work place free of harassment; and failed to take appropriate steps to remove the open display of objects which could serve to offend and harass other employees.
 

 Stamps, Hartline, and Miller were each suspended for thirty days without pay. Chauvin and Doucet were each suspended for twenty days without pay.
 

 The Plaintiffs subsequently filed appeals with the Jefferson Parish Personnel Board (JPPB). The Personnel Board appointed a hearing officer to conduct the 1.¡¡hearings on the appeals. The Hearing Officer consolidated the appeals. He heard the appeals on five different days beginning in June of 2008 and ending in November of 2008.
 

 On January 13, 2009, the Hearing Officer issued decisions reducing the suspensions. He found that the objects “were inappropriate to a workplace environment and should not have been in a Jefferson Parish Office, especially the darts, for the dart board.” The Hearing Officer found that all five Plaintiffs violated ROC. However, the Hearing Officer determined that “no harassment was intended and in fact, none occurred,” and as a result, the Hearing Officer determined that the Plaintiffs did not violate the Parish’s workplace harassment policy. Consequently, the Hearing Office reduced Hartline’s suspen
 
 *23
 
 sion from thirty to twenty days, Stamp’s and Miller’s suspensions were reduced from thirty to fifteen days, Doucet’s suspension was reduced from twenty to ten days, and Chauvin’s suspension was reduced from twenty to five days.
 

 The Appointing Authority then appealed to the Jefferson Parish Personnel Board (JPPB) which issued a judgment on February 26, 2009. The JPPB reversed the decisions of the Hearing Officer, and reinstated the Appointing Authority’s suspensions. The JPPB stated in its ruling, “After reviewing the hearing transcripts, pleadings and the record, the Board has reached a unanimous decision in this matter that the Appellants violated the Jefferson Parish Workplace Harassment Policy as written, no intent being required, and the penalties imposed albeit harsh, are within the discretion of the Appointing Authority.”
 

 The issues on appeal are whether the JPPB committed manifest error by reversing the decisions of the Hearing Officer; in failing to rescind the suspensions, substituting the suspensions with an appropriate letter of warning; and in failing to award the Plaintiffs back pay, attorney’s fees and costs. The Plaintiffs also assert 16that the JPPB erred by accepting or considering certain documents provided by the Hearing Officer with the Application for Review of the Hearing Officer’s decision that had not been introduced into the record, contrary to the JPPB Rules of Appeal Procedure and other applicable law.
 

 The Plaintiffs first contend that the JPPB was manifestly erroneous in sustaining the suspensions.
 

 The Plaintiffs argue that the Hearing Officer listened to five days of live testimony, considered the credibility of the witnesses, and correctly characterized the items and intent of the Plaintiffs. He described the rope with the large knot and running loop “as a lariat of the kind used to rope cattle,” and the whip “as a gift to Bill Hartline as a joke to go along with the whipping post.” He stated that the third item was “a dart board with a photograph of a man who had gone fishing with members of the Sewerage Department and darts.” The Hearing Officer concluded that this item was “a way of mocking the man in the photo who did not live up to his agreement to share the fish, but who took what must have been a bigger share with him at the conclusion of the trip.” The fourth item was a kicking mechanism, described as a device made to resemble the device Wyle E. Coyote used to punish himself when he would fail to capture the road runner in the popular cartoon “The Road Runner.” The Hearing Officer concluded that the items were intended to be humorous, not to harm or harass anyone. Thus, the Plaintiffs claim Appointing Authority failed its burden of proving that a violation of the Parish workplace policy had occurred, as no harassment was intended and in fact, no harassment had ever occurred.
 

 The Plaintiffs note that the Hearing Officer made a specific reference to the fact that Lee took the photographs over an eighteen month period, and only filed a complaint after he was disciplined for other reasons.
 

 |7The Plaintiffs further argue that it is uncontroverted that the items were neither owned by, nor placed in the office by any of the Plaintiffs. The kicking device was built fifteen to eighteen years prior to this litigation. The dart board was placed in the office after a fishing trip five to six years prior to this litigation. The whip, rope, and whipping post sign were assembled by prior employees of the Department years before, and Hartline, a Plaintiff here, was the brunt of that joke.
 

 
 *24
 
 They also point out that the items were repeatedly mischaracterized and misrepresented by the media and the Appointing Authority. The Plaintiffs argue that the harsh reaction by the Parish to the discovery of these items was a knee-jerk reaction caused by the media, the NAACP, and the threat of litigation by the complaining employee, and did not result from an act or omission by the Plaintiffs. They argue that they received a severe discipline due to pressure from the events that had occurred in Jena, Louisiana involving the display of a noose at the high school, and the subsequent racial tensions there. Hence, the characterization of the rope in this case as a noose, when it was not intended to be anything other than a cattle rope, and the characterization of the face on the dart board as African American, when the face was actually of a Caucasian man. The Plaintiffs further note that the Appointing Authority failed to call Lee to testify at the hearing, and only presented the testimony of Ward, its investigator. Although Wai'd testified that he found the items offensive, he also incorrectly characterized the rope as a noose and another item as a gallows type device.
 

 The Defendant argues that the Plaintiffs did violate the workplace harassment policy. It cites the testimony of Ward and the U.S. Equal Employment Opportunity Commission (EEOC) determination that there was reasonable cause to believe that the presence of the rope and other objects on display in the Department were racially offensive and constituted a violation of Title VII.
 

 |sThe documents submitted by the Defendant in its application for review of the Hearing Officer’s decisions contained the five decisions of the Hearing Officer, a copy of the Parish workplace harassment policy, a copy of the EEOC Determination, and photographs of the rope and whip, all of which were introduced into evidence. The items that were not entered into evidence at the hearing were: a one page transcript of comments made by the hearing officer at a disciplinary hearing involving Lee on May 13, 2008; an article in the New Orleans, Louisiana newspaper, the Times-Picayune (T-P) dated May 14 2008 that quoted those comments; and one page from Ward’s testimony at the hearing. According to the hearing officer’s comments made after Lee’s disciplinary hearing, Lee complained in his testimony that the Defendant was retaliating against him for complaining about the objects at issue here. The hearing officer at that time described the items differently than in the 2009 decisions and stated that Lee was upset every time he saw them.
 

 The Jefferson Parish Personnel Rules (the Rules), Rule II, Section 8.1 grants to the JPPB the authority to hear and decide all removal and other actions appealable under the Rules.
 

 A civil service employee is afforded protection in disciplinary actions, taken without cause, pursuant to La. Const. Art. 10 Sec. 8(A).
 
 St. Pe’ v. Jefferson Parish Dept. of Public Works-Drainage Pump Stations,
 
 06-779, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 623, 625;
 
 Adams v. Jefferson Parish Department of Community Action Programs,
 
 02-1090, p. 4 (La. App. 5 Cir. 4/29/2003), 845 So.2d 1147, 1150;
 
 Lewis v. Jefferson Parish Dept. of Public Works,
 
 99-16, p. 4 (La.App. 5 Cir. 5/19/99), 761 So.2d 558, 559,
 
 writ denied,
 
 99-2906 (La.1/14/00), 753 So.2d 215. Cause is synonymous with legal cause, and legal cause is when the employee impairs the efficiency of the public service.
 
 St. Pe’
 
 06-779 at 3, 956 So.2d at 625;
 
 Bruno v. Jefferson Parish Library Dept.,
 
 04-504, p. 7 (La.App. 5 Cir. 11/30/04), 890 So.2d 604, 608.
 

 
 *25
 
 The appointing authority bears the burden of proving legal cause.
 
 St. Pe’
 
 06-779 at 3, 956 So.2d at 625;
 
 Adams,
 
 02-1090 at 4, 845 So.2d at 1150;
 
 Lewis,
 
 99-16 at 4, 761 So.2d at 559. In addition, the personnel board has a duty to decide, independently from the facts presented, whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction.
 
 St. Pe’
 
 06-779 at 3, 956 So.2d at 625;
 
 Bruno,
 
 04-504 at 7, 890 So.2d at 608.
 

 On appeal, this Court applies the clearly wrong or manifest error rule.
 
 St. Pe’,
 
 06-779 at 3, 956 So.2d at 625;
 
 Lewis,
 
 99-16 at 4, 761So.2d at 560. For a review of an administrative disciplinary decision, the appellate court is limited to a determination of whether the decision was made in good faith for legal cause. Unless the record contains insufficient evidence to support the administrative decision or shows that the decision was clearly wrong, the decision must be affirmed.
 
 St. Pe’
 
 06-779 at 3, 956 So.2d at 625;
 
 Lewis,
 
 99-16 at 4, 761 So.2d at 560.
 

 The ROC provides in pertinent part that “Each employee, because of his job and assignment, has to perform certain duties and assume responsibilities. An employee’s failure in either or both of these areas is neglect of duty.” ROC, Section 3.14, Neglect of Duty.
 

 The Appointing Authority also disciplined the Plaintiffs for violating Section 7.03 of the ROC which lists,
 
 inter alia,
 
 the following as prohibited conduct and grounds for disciplinary action:
 

 2. Engaging in fighting, horseplay, scuffling, practical joldng, pushing, shoving ... or other such disruptive and non-productive behavior.
 

 [ )06. Threatening, intimidating, coercing, distracting, causing confusion, shouting, or in any way interfering with work of fellow employees.
 

 12. Insubordination or refusing to obey orders.
 

 16. Committing any act to discredit, disrupt, or prejudice of the Parish; violating any laws, rules, or regulations of the nation, state, parish, or other competent jurisdiction; conviction of a felony offense while employed.
 

 18. Violation of “Sexual Harassment,” “Harassment,” “EEO”, and/or “Violence in the Workplace Policies”.
 

 19. Unsatisfactory job performance; violation of “Employee Duty Expectations.”
 

 Jefferson Parish adopted the workplace harassment policy in recognition of its legal responsibility to prevent the creation of a hostile, and/or racially insensitive and/or racially provocative workplace environment.
 

 The workplace harassment policy provides that “it is the intent of the Jefferson Parish Government to provide and maintain a workplace free of all types and forms of harassment, including but not limited to harassment based on disability, national origin, age, race, color, religion or gender.” Paragraph II,
 
 Policy.
 
 That section further states that the employee is prohibited from “... conduct that harasses, denigrates, shows hostility, insults or involves offending acts such as epithets, slurs, negative stereotyping, threatening behavior, public humiliation, or posting, distributing, creating, or displaying written or graphic materials which serve to offend and harass an individual or group of individuals.”
 

 The objectives of the workplace harassment policy include providing a workplace which is conducive to efficient, productive public service and to ensure that employees do not have to endure harassment.
 
 *26
 
 Paragraph III,
 
 Policy Objectives.
 
 All employees, including supervisors, are responsible for promoting a workplace free of harassment and complying with the policy. Paragraph IV,
 
 Policy Scope,
 
 and Paragraph V, A.,
 
 Supervisor Responsibility.
 

 | n Supervisors under the Policy must assist in maintaining a workplace free of harassment, including periodically inspecting work locations and facilities on a regular basis to insure that no offensive materials are posted or displayed. Paragraph V, A,
 
 Supervisor Responsibility.
 

 The evidence shows that all of the Plaintiffs worked in supervisory capacities while the items were displayed. They were aware of and received training about the harassment policy. Stamps testified that the policy was usually discussed in staff meetings. The other four Plaintiffs received copies of and signed a receipt for the harassment policy and ROC.
 

 In
 
 McGinest v. GTE Service Corp.,
 
 360 F.3d 1103, 1115 (9th Cir.2004),
 
 cert. denied,
 
 552 U.S. 1180, 128 S.Ct. 1226, 170 L.Ed.2d 61 (2008), the Court held that allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial group of the complainant.
 

 In this case, Ward testified that the fifty-two past and present employees he interviewed indicated that there was no racial intent in displaying the objects or allowing them to remain in the office, although one or two said they complained verbally to their supervisors. Nevertheless, Ward testified he was offended, particularly by the whip, and the rope which he perceived as a noose. Ward is the Chief Administrative Assistant, and his testimony was credible. His opinion indicates that the items were at the very least potentially offensive to reasonable African-Americans. That conclusion is supported by the reasonable cause determination issued by the EEOC, which also found the items racially offensive. After hearing this testimony, Stamps and Miller conceded that the rope and the whip had the potential to be racially insensitive or racially provocative.
 

 Based on this evidence, we find that the Plaintiffs violated the ROC and the workplace harassment policy by failing to remove the objectionable items, have | l2them removed, or report their existence to the appropriate authority, if there had been resistance to their removal. The fact that the items had been there for a long time, or that the Plaintiffs did not consider the items to be anything other than jokes on each other is irrelevant. It is the perception of the observer that determines whether an act or display is legally considered harassment. The perception here is that the items were racially offensive.
 

 In regard to the JPPB’s consideration of Lee’s transcript from his hearing and the T-P article that were not part of the record, there is sufficient evidence to support the decision of the JPPB without consideration of those documents. Furthermore, the JPPB had the right to consider all of the evidence produced at the hearing, including the copy of Ward’s testimony. The JPPB is authorized to review the entire record to determine whether the Healing Officer erred in his decisions. See
 
 St. Pe’,
 
 06-779 at 3, 956 So.2d at 625;
 
 Lewis,
 
 99-16 at 4, 761 So.2d at 560. In addition, the Board also based its decision on the fact that no intent is necessary to find a violation. We agree that no intent is required in order for an employee to violate the harassment policy.
 

 Consequently, we find no manifest error in the decision by JPPB finding that the Plaintiffs violated the harassment policy.
 

 
 *27
 
 The Plaintiffs further argued that the suspensions were excessive in light of facts, and that they were harsh, as they were suspended without pay near the Christmas holidays.
 

 The JPPB recognized that the penalties imposed by the Appointing Authority were harsh. However, the Plaintiffs allowed the items to be displayed for many years, even during a period of racial tension. The Plaintiffs’ insensitivity to the possible misinterpretation of the meaning of the display, combined with their positions of authority, warrants the penalties imposed. Thus, we find that the JPPB he,did not err in failing to reverse the suspensions, or reduce the length of the suspensions.
 

 Accordingly, we hereby affirm the decision of the Jefferson Parish Personnel Board.
 

 AFFIRMED.
 

 [1]
 

 . Policy No. 2.02 was promulgated in 1996 by the Jefferson Parish President in a document entitled Administrative Management Policy Memorandum.
 

 [2]
 

 . Stamps has been the Assistant Director since 1998. Miller was a Superintendent II from 2003 to 2006 when he was promoted to General Superintendent of Lift Stations. Hartline was Sewerage Maintenance Foreman from 1999 until he was promoted in 2003 to Sewerage Lift Station Superintendent II. Chauvin has been a Foreman I since 2003. He reports to Hartline. During the relevant time period, Chauvin was the immediate supervisor of four laborers who worked in the Department, including Terrance Lee, an African-American, the complainant in this case. Doucet was a Sewerage Lift Station Superintendent II from 1997 to July of 2003. All, except Stamps worked in or near the office containing the items in plain view, and Stamps went into the office regularly.