DONYA DECOU-SNOWTON

VERSUS

JEFFERSON PARISH DEPARTMENT OF
JUVENILE SERVICES

NO. 22-CA-55

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH PERSONNEL BOARD
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-326,
RUFUS C. HARRIS, III, CHAIRMAN, MICHAEL L. FANTACI, AND
DANIEL R. MARTINY, BOARD MEMBERS PRESIDING

November 09, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Hans J. Liljeberg

**<u>AFFIRMED</u>**

**SMC**
**FHW**
**HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DONYA DECOU-SNOWTON
    Stephanie Dovalina

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON PARISH DEPARTMENT OF JUVENILE SERVICES
    Crystal M. Heine

**CHEHARDY, C.J.**

Plaintiff, Donya Decou-Snowton ("Snowton"), appeals the November 18, 2021 decision of the Personnel Board for the Parish of Jefferson, affirming the Referee's June 15, 2021 order dismissing her appeal of a presumed resignation, and denying her Application for Review. For the following reasons, we affirm the Personnel Board's decision.

## PROCEDURAL HISTORY

Snowton, a former employee of the Jefferson Parish Department of Juvenile Services ("DJS"), was designated "presumed resigned" from her position as a Juvenile Detention Home Supervisor, effective June 8, 2020, after she failed to appear for work following the expiration of approved leave on June 7, 2020. Snowton appealed her presumed resignation[1] to the Jefferson Parish Personnel Board alleging that she was a whistleblower. Specifically, Snowton alleges her "termination" was the result of discrimination and retaliation by DJS entitling her to whistleblower protection because she disclosed its violations of federal and state laws, and Jefferson Parish policies and rules. In particular, Snowton contends DJS violated Jefferson Parish Personnel Rules of the Classified Services ("JPPR"), Rule IX, Section 3, relating to sick leave; Section 16, relating to FMLA; Rule II, Section 7, relative to Whistleblower Protection; and Administrative Policies 301-302.

Pursuant to Rule II, Section 8.1 of the JPPR, the Board appointed a Referee to hear the matter. The Referee heard the appeal over two days, March 23, 2021, and April 21, 2021. After considering the evidence and testimony presented during the two-day hearing, and the post-hearing briefs filed by Snowton and the

---

[1] Throughout Snowton's brief on appeal she avers that she was "terminated" from her position with DJS rather than "presumed resigned." The designations of "presumed resigned" and "terminated" confer different outcomes upon an employee. When an employee is terminated, the employee is barred from re-applying for a position with the Parish for a period of two years, whereas no such restriction is imposed upon an employee who is presumed resigned. *See* Jefferson Parish Personnel Rules of the Classified Service, Rule IX, Section 5.

Jefferson Parish Appointing Authority, the Referee issued its ruling on June 15, 2021, dismissing Snowton's appeal finding that Snowton failed to carry her burden of showing that she was a whistleblower or that her presumed resignation was a result of discrimination and/or retaliation. According to the Referee, "she did not show either."

Snowton filed an Application for Review of Referee's Decision on July 6, 2021. Following oral argument before the Jefferson Parish Personnel Board, on November 18, 2021, the Board issued an order affirming the Referee's decision dismissing Snowton's appeal.

Snowton timely filed the instant appeal challenging the correctness of those rulings.

**FACTUAL BACKGROUND**

Snowton began working as a permanent employee for DJS in November 2008. During her tenure there, she was promoted numerous times, and held the position of Juvenile Probation Officer III, a supervisory position, until she was demoted in November 2019. Snowton was notified that she had been accused of misconduct within the department, and following a pre-disciplinary hearing held on November 20, 2019, she was demoted, without a change in pay, to a Juvenile Detention Home Supervisor.[2]

On November 26, 2019, Snowton was notified by Roy Juncker, Director of DJS ("Juncker"), of the disciplinary action taken against her and of the effective date of the demotion. Juncker instructed Snowton to report to work at Rivarde Juvenile Detention Center on Saturday, November 30, 2019, for the 4:00 p.m. to midnight shift, to begin training for her new position. When Snowton was

---

[2] In a separate matter, Snowton filed an appeal of her demotion on November 26, 2019, on the basis of racial discrimination. At the time of the hearing in the instant matter, the appeal of Snowton's demotion—which is not before the Court in this appeal—was still pending and then subsequently dismissed.

apprised of her demotion and the shift change in her schedule,[3] she advised Juncker that she would be unable to present for work the weekend of November 30, 2019, due to a prior commitment to be out of town. Juncker told Snowton that she would have to make other plans as he needed her to report to duty on November 30, 2019, because they were short-staffed at the detention center.[4]

According to Snowton, her husband was suffering from a serious medical condition and was due to be discharged from the hospital to a nursing home. As there were allegedly no nursing home rooms available for him in the immediate area, she had previously made plans to travel to North Louisiana during the weekend of November 30, 2019, to visit a facility that could possibly accommodate her husband's needs. Juncker denied that Snowton informed him of any issues relating to either her or her husband's medical conditions when he instructed her to report for work at Rivarde. Specifically, Juncker contends Snowton did not tell him that her prior commitment for the weekend of November 30, 2019, was related to her husband's health.

Snowton reported to work the following day, November 27, 2019, but requested permission to leave early, claiming she was suffering from extreme stress precipitated by her husband's medical condition and exacerbated by DJS's actions and directives to present to work on the Saturday after Thanksgiving. Snowton contends that she needed to take prescription medication, so she asked for permission from her acting supervisor to leave work early on sick leave for the remainder of the day, which her acting supervisor authorized.

---

[3]     The demotion resulted in a modification of Snowton's previous Monday-to-Friday work schedule, which now included a schedule requiring her to work weekends.

[4]     According to Juncker, in November 2019, DJS was experiencing a critical manpower shortage. Specifically, DJS was short three supervisors, and either five or six detention officers, and Juncker needed Snowton to begin her training as a supervisor. While Snowton had been a supervisor on the probation side, her new position was as a supervisor on the detention side, which required completely different duties.

Snowton received an email on November 27, 2019, from DJS's assistant director, Christopher Trosclair ("Trosclair"), with the December work schedule, showing that Snowton was to report to work on November 30, 2019, for training. Snowton emailed Trosclair stating that she would be out on sick leave on November 30, 2019, and unable to report for training.

On December 1, 2019, Snowton received notice from her husband's physicians of additional complications associated with his condition, which required surgery. Thereafter, Snowton sent several emails and text messages to Trosclair advising that she would be on sick leave through December 4, 2019, due to *her* medical condition. Her husband's medical condition was not mentioned.

On December 2, 2019, Trosclair requested Snowton to provide a written statement by a registered physician or other accepted authority certifying that she was ill and unable to return to work.[5] In response, Snowton emailed a note from her prescribing physician on December 3, 2019, stating that Snowton was a patient in his office "currently taking Xanax for anxiety" and to "to call [the doctor's office]" if there were "any questions or concerns." According to Snowton, this physician's note was sufficient to show that she was on medication that required her to be out on sick leave. Specifically, Snowton believed that, due to Jefferson Parish's substance abuse policy, and the fact that she was a safety sensitive employee, she was not to enter the premises of Jefferson Parish facilities while taking the prescription medication, Xanax, because doing so could subject her to

---

[5] Although the sick leave policy does require an employee on sick leave for *five* or more days to submit a written statement from a physician or other acceptable authority certifying that the employee "was ill and unable to work during the period of sick leave of absence," it also specifies that a note may be required, "if there is reasonable doubt as to the validity of an employee's claim for sick leave." JPPR, Rule IX, Section 3.5(b). Juncker testified he had doubts and was "suspicious" as to Snowton's veracity regarding sick leave because she had previously told him on November 26, 2019, that she could not report to work in her new position due to a prior commitment to be out of town during the weekend of November 30, 2019. Then, she left work early on November 27, 2019, claiming to be sick, and later advised Trosclair that she would be out on sick leave until December 4, 2019. Given this sequence of events, Juncker was suspicious of Snowton's illness and her request for leave, and, thus, requested verification.

disciplinary action for violation of the substance abuse policy if she were to be randomly drug screened.[6]

On December 4, 2019, Snowton submitted an application for leave under the Family Medical Leave Act ("FMLA") relative to her *husband's medical condition*, effective December 7, 2019. The FMLA forms were placed in the office mailbox of Christi Lacombe ("Lacombe"), Executive Assistant to Juncker and the FMLA coordinator for DJS. Lacombe was apparently out of the office at the time Snowton's application was submitted. In her application, Snowton specified June 7, 2020, as her date of return to work. Snowton signed the documentation immediately below the Parish's standard notification which informs applicants that "a failure to return to work at the end of my leave period may be treated as a resignation" unless an extension has been agreed upon and approved by the department in writing. At no time did Snowton ever submit a FMLA application for her *own* medical condition, or ever contact or personally meet with Lacombe to discuss her FMLA application, as was customary.[7]

Because Lacombe was out of the office when Snowton's FMLA forms were placed in her mailbox, Snowton's application ended up on Director Juncker's desk. Juncker signed Snowton's FMLA application on December 6, 2019, approving FMLA leave due to the medical condition of Snowton's husband, effective

---

[6] Section I of the Jefferson Parish Substance Abuse Policy Manual provides, in part, that "[a]n employee is not permitted to arrive on Parish premises, report to work, or perform his or her job duties with any quantity of a prohibited and/or controlled substance in the employee's system which could adversely affect his/her ability to perform their job duties." Further, "[a]n employee in a Safety or Security Sensitive position is not permitted to report to duty: … while taking any prescription medication that may adversely affect the employee's safe, productive, or efficient work performance unless and until the proper authorizations have been obtained.

[7] The testimony at the hearing reflected that, generally, when an employee needs to go out on FMLA, he would contact Lacombe, who prepares a packet, and when she has completed her portion, she contacts the employee. Thereafter, she goes over the packet with the employee, explaining the portions the employee needs to complete, with instructions to return the completed packet as soon as possible. Once the completed packet is returned, the approval page is given to the director for his review and approval. Once the application is approved or denied, it is sent to the employee with a designation notice.

December 7, 2019.  Thereafter, the application was placed on Lacombe's desk for processing.[8]

Snowton emailed Trosclair on December 6, 2019, advising that *her* medical condition had not changed and that she was still taking the medication prescribed by her physician.  Snowton also advised that she had submitted "necessary documentation for FMLA" in reference to changes in her *husband's* serious medical condition, and that she would be on "sick/FMLA leave until further notice."  Snowton copied Juncker and Lacombe on the email.  According to DJS, this was the first notice given by Snowton regarding her husband's condition and that she was in need of leave to care for him.  Up to this point, all communications were focused on Snowton's *own* personal medical condition.

On December 9, 2019, relying on the December 3, 2019 physician's note provided by Snowton—stating, "If you have any questions…please don't hesitate to call"—Gretchen Tilton, assistant director of the human resources department for Jefferson Parish ("HR"), contacted the office of Snowton's physician.  Tilton called the physician's office for clarification regarding whether the physician, who prescribed the Xanax, had placed Snowton out of work and to confirm when the medication had been prescribed.  A nurse in the office advised Tilton that Snowton was prescribed Xanax on an as needed basis, and that Snowton had contacted the physician's office on November 29, 2019, for a prescription.  The physician's office, however, did not have any information on file stating that Snowton could not work.  Additionally, there was no information indicating that Snowton had presented in person for an office visit.

Tilton believed she had the authority to contact Snowton's physician based on the directive in the physician's note that said to call if there were any questions.

---

[8]     By the time Lacombe returned to the office, the five-day period to notify the employee of FMLA eligibility and benefits had lapsed, and notification was not mailed to Snowton until December 17, 2019.

DJS acknowledged that, while federal law permits an employer to contact an employee's physician regarding concerns under FMLA, the JPPR does not provide such authority without prior permission from the employee. Consequently, DJS conceded that Tilton violated the Parish's personnel rules by contacting Snowton's physician (and also her husband's physician) without her permission, not to harass or interfere with Snowton's request for sick leave, but only to seek clarification regarding Snowton's request.

On December 10, 2019, Juncker sent a letter to Snowton, via regular and certified mail—which was returned unclaimed—advising that she was considered AWOL from November 30, 2019, through December 6, 2019, as the physician's note provided in reference to her *own* medical status prior to her FMLA request did not state that she was incapacitated or unable to perform the essential duties of her position.[9] Juncker's letter further advised that if her absence was due to her *own* serious medical condition, she would have to submit additional FMLA paperwork on her own behalf, including a medical certification indicating the date her condition commenced, the probable duration of the condition, appropriate medical facts regarding the condition, and an expected return to work date. The letter also instructed Snowton to return any department-issued property to Trosclair no later than the close of business on December 13, 2019.[10] Trosclair also emailed Snowton advising her that she needed to return the equipment to him.[11]

---

[9]     Based on the December 3, 2019 note from Snowton's physician, and the information obtained by Tilton in her call to the physician's office regarding why Snowton could not return to work, Juncker found the medical facts for her absence from November 30, 2019 through December 6, 2019, were insufficient, so he did not change the AWOL status.

[10]     Snowton timely returned the department issued property, but delivered it to a supervisor other than Trosclair, who signed a letter stating that all property listed in the letter had been received. Snowton was later advised that she owed DJS money for a docking station that she did not return and for her employment badge, which she claimed to have lost several years prior in a house fire and never replaced.

[11]     Though Junker had already approved Snowton's FMLA application six days earlier, his letter made no mention regarding her eligibility status or whether there were outstanding issues concerning the application.

Snowton contacted Tilton in HR on December 13, 2019, questioning why she was given an AWOL designation between November 30, 2019 and December 6, 2019, and why she was being asked to complete a FMLA application for her own medical condition. As to the AWOL designation, Tilton explained to Snowton that when she requested sick leave beginning on November 30, 2019, it was due to her *own* medical condition, and that FMLA for her husband's medical condition did not begin until December 7, 2019, as per the FMLA application she submitted. Tilton advised Snowton that the information she provided in support of her request for sick leave was insufficient, therefore, those dates were marked as AWOL, otherwise known as "unapproved leave without pay."

Snowton and Tilton communicated again on December 16, 2019, regarding the days for which Snowton was designated AWOL. On this occasion, Snowton disclosed information concerning her spouse's condition that had previously not been made known to DJS or HR. Prior to this conversation, every message Snowton sent to DJS or HR related to her own medical condition or illness, not that of her spouse, even though her FMLA leave was based on her husband's serious medical condition. At this time, Tilton advised Snowton that she could submit additional information or file her own FMLA application if she wanted reconsideration of the days for which she was designated AWOL.

Also on December 16, 2019, counsel for Snowton sent a letter directed to Director Juncker, Assistant Director Trosclair, and Tilton, advising that DJS was in violation of Jefferson Parish Policy regarding FMLA, federal and state law, and that a response to her FMLA application was required, in addition to pay for a week of sick leave.[12] Snowton claims this letter was sufficient to trigger protection under the Jefferson Parish Whistleblower Policy.

---

[12] Specifically, the alleged violations included DJS's failure to provide Snowton with "notice of eligibility and rights and responsibilities" regarding her FMLA application within five days as required, and its failure to pay Snowton for sick days taken in violation of its sick leave policy.

22-CA-55                                    8

Rather than submit an application for FMLA leave on her own behalf as suggested by Tilton, Snowton submitted a second physician's note on December 17, 2019. The note was from a physician other than the physician who provided the December 3, 2019 note on Snowton's behalf, and was not the physician who prescribed the Xanax to Snowton. The two physicians are not in the same practice. This physician's note stated that Snowton was seen in his clinic on December 12, 2019, and requested that Snowton should be excused from work for the days between November 27, 2019, and December 4, 2019.

Contrary to Tilton's testimony that Snowton was previously advised of the approval of her FMLA application relating to her husband's medical condition during their telephone conversation regarding Snowton's sick leave and AWOL status and the recommendation that she file a FMLA application on her own behalf, Snowton contends that she was not advised of her FMLA approval until December 17, 2019. Snowton contends Tilton contacted her to advise of the approval in direct response to her counsel's December 16, 2019 letter disclosing DJS's alleged violations of law and policy.[13] However, Snowton later received a copy of the approved application confirming that it was signed by Juncker *on December 6, 2019*, approving her request for FMLA leave from December 7, 2019, through June 7, 2020.

Also on December 17, 2019, Lacombe sent Snowton, via certified and regular mail, information entitled "State of Employee Benefits Upon Family And Medical Leave of Absence," informing Snowton of her obligations and responsibilities regarding benefits, including her health insurance, during her

---

[13] At the appeal hearing, Juncker acknowledged that the protocol established for DJS in this regard was not followed, and that Snowton did not timely receive notice that her FMLA application had been approved. Juncker explained that there was no ill intent involved, and that Lacombe's leave from work at the time Snowton submitted the FMLA application—which applications are Lacombe's responsibility to handle—caused the delay in her advising Snowton of her eligibility and constituted "extenuating circumstances."

FMLA leave. Included in the information sent to Snowton was notice that she would be responsible for paying her portion of health insurance premiums while on approved leave without pay, the failure of which would result in termination of her health insurance.

Tilton contacted Snowton's husband's physician, Dr. Michael Russo, on December 18, 2019, to authenticate the medical certification received from his office that was contained in the FMLA application submitted by Snowton.[14] At that time, Dr. Russo's office advised Tilton that Snowton's husband had not been hospitalized since September 18, 2019, and that he was a nursing home patient. As a result of Tilton's inquiry, Dr. Russo's office subsequently faxed the medical certification advising that Snowton was "able to return to work on January 1, 2020," as her husband's condition was "not expected to improve." Given Dr. Russo's response, Snowton was notified on December 30, 2019, that she should contact her supervisor and plan to return to work on January 1, 2020.[15]

In the meantime, Snowton filed her first Civil Service Appeal on December 26, 2019, relating to her November demotion, claiming discrimination, retaliation, and harassment. Snowton suggests that the December 30, 2019 email requiring her to report to work the following day was in direct retaliation for her filing the appeal of her demotion just four days earlier, and was tantamount to an allegation that she had filed a fraudulent FMLA claim.

---

[14] DJS does not dispute that Tilton again violated Jefferson Parish's FMLA policy by contacting Dr. Russo without prior permission from Snowton, but contends that Tilton believed she had authority to contact the physician under federal FMLA law, which allows an employer to contact an employee's physician to authenticate a document or for further clarification of a document. Jefferson Parish's FMLA policy, Section 9.2, provides that "a *health care provider representing the Parish* may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification." Tilton is admittedly not a health care provider representing the Parish.

[15] Snowton contends that despite representation from Jefferson Parish's counsel that the response from Dr. Russo would be forthcoming to Snowton's counsel, it was not produced until many months later, after being instructed to do so by Jefferson Parish Civil Service.

On January 6, 2020, Snowton's counsel emailed counsel for DJS, and reiterated that DJS had violated Snowton's rights, by contacting Snowton's treating physician, which was allegedly in violation of the Jefferson Parish's FMLA policy and privacy laws. The email further alleged that DJS interfered with her "federal right to utilize her FMLA leave" once she met the statutory requirements entitling her to FMLA leave. Snowton's counsel further noted that the FMLA protects employees from retaliation or discrimination for exercising their rights under FMLA. Snowton's counsel claimed that DJS's alleged violations entitled Snowton to whistleblower protection.[16]

In accordance with the information regarding medical insurance and other benefits that was included with the copy of the signed FMLA packet mailed to Snowton on December 17, 2020, DJS made the last pay roll deduction for Snowton's medical insurance on February 9, 2020, as DJS considered Snowton to have begun approved leave without pay ("LWOP"). Thereafter, despite having been previously notified of her responsibilities regarding her medical benefits during her leave, due to Snowton's failure to pay her portion of the benefits owed, her benefits lapsed on February 29, 2020.

On February 26, 2020,[17] Snowton received notice, that her twelve weeks of FMLA were expiring on February 28, 2020, and that she was to report to work on February 29, 2020.[18] In response, at 3:35 p.m. on Friday, February 28, 2020, Snowton emailed Juncker requesting an extension of FMLA beyond February 28, 2020, in addition to a reasonable ADA accommodation for her own disability.

---

[16]    Snowton's counsel contacted the Department of Labor ("DOL") on January 8, 2020, to make a complaint regarding DJS's failure to comply with FMLA and wages that were not paid Snowton for sick leave. DOL did not initiate an investigation.

[17]    The letter from DJS's counsel to Snowton advising that her FMLA was expiring February 28, 2020, and that she was expected to return to work on February 29, 2020, was dated February 17, 2020, but was not received by Snowton until February 26, 2020.

[18]    Snowton contends that this was her first notice that her FMLA leave was being reduced from June 7, 2020, to February 28, 2020.

Snowton noted that the expected return to work date on her FMLA application was June 7, 2020. Director Juncker responded to Snowton's email at 4:49 p.m. on February 28, 2020, advising that her twelve weeks of FMLA had been exhausted and that to request an additional twelve weeks of leave without pay was not a reasonable ADA accommodation. Juncker stated that the Parish had been reasonable in extending her FMLA request beyond the January 1, 2020 return to work date as noted by her physician. Juncker advised that Snowton's failure to return to work would result in her being considered resigned from her position effective February 29, 2020, in accordance with JPPR, Rule IX, Section 5.[19]

Tilton spoke with Juncker on Monday, March 2, 2020, following Snowton's Friday, February 28, 2020 request and advised him that because Snowton requested an ADA accommodation, HR was required to engage in an interactive process with Snowton before making a determination regarding whether she was entitled to an ADA accommodation. Accordingly, on March, 2, 2020, Tilton emailed Snowton to inform her that Juncker's email regarding the ADA request had been sent in error. Tilton attached an ADA Request for Accommodation Form and Receipt with instructions to return the completed form to DJS by the close of business on Friday, March 6, 2020.

At the time Tilton sent the March 2, 2020 email to Snowton, Tilton was unaware that Lacombe, the executive assistant for DJS responsible for the personnel matters for the department, had already prepared a separation notice and submitted it to the State on March 2, 2020.[20] When Snowton did not report to work on February 29, 2020, a presumed resignation had been entered into the

---

[19]   JPPR, Rule IX, Section 5.1(C) provides that "[w]hen an employee does not return to work at the expiration of a period of leave without pay as authorized herein, s/he shall be considered as having resigned his/her position as of the day following the last day or leave."

[20]   Once she is notified by the appointing authority (*i.e.*, Juncker) that an employee is presumed resigned, Lacombe is responsible for completing a separation notice within three days of the presumed separation from employment and submitting it to the State.

Parish's processing software, but HR was advised not to process it.[21]  Accordingly, the separation notice was canceled, but somehow it still went through to benefits. Consequently, Snowton's insurance was canceled effective February 29, 2020, due to her failure to pay her portion of the amount owed.  Lacombe sent a March 12, 2020 email to Snowton's work email address acknowledging that HR was advised not to process the presumed resignation and that it was, therefore, canceled in the system.

Latorya Jones, a benefits specialist for Jefferson Parish, emailed Snowton advising that in order for her to have her benefits reinstated, Snowton would be required to pay her missed payroll deductions.  Snowton denies that she was ever notified or received information concerning payment of her medical insurance while on leave, and was not advised until May 20, 2020, that her medical insurance had been terminated by the Parish.[22]

On March 6, 2020, Snowton returned the ADA paperwork to Tilton. Snowton contends the ADA form was signed by her physician following a March 6, 2020 appointment, and that the paperwork was complete.  DJS, however, claimed the first page of the form was illegible and appeared to request a year of additional leave, or a flexible schedule for a year, on the basis that Snowton would be unable to perform her job duties for twelve months due to a mental impairment. In the physician's note attached to Snowton's ADA form, it was recommended that Snowton be "out of work until further notice."  After a thorough review of the ADA form Snowton submitted, Tilton concluded that based on the information

---

[21]    Lacombe testified that once she was verbally notified to stop the separation, she contacted the State to stop the separation paperwork.

[22]    Lacombe testified at the hearing that when an employee is out on approved leave without pay, whether it is FMLA or any type of leave without pay, the employee is responsible to pay his portion of benefits, which goes directly to payroll.  The information sheet on the benefits portion of the FMLA packet indicates who the employee needs to contact to make his payroll payments.  DJS contends Snowton would have been aware of the notice regarding benefits as it was contained in her FMLA packet that she signed, and includes an acknowledgment from the employee that he/she is responsible for payment of medical benefits if he/she is out on leave without pay.

provided, an accommodation could not be considered, which would allow proper evaluation of Snowton's needs. Thus, on March 9, 2020, Tilton advised Snowton that additional information was needed in order to consider an accommodation as all required sections of the form were not completed.[23] Snowton was requested to provide that information in advance of a telephone conference scheduled for March 12, 2020.

In response, Snowton's counsel sent a letter to DJS dated March 9, 2020, which again outlined the legal violations purportedly committed by the Parish, as well as alleged violations of Parish policies. The letter demanded that DJS stop harassing Snowton and to stop interfering with her FMLA leave. Further, counsel reiterated that the physician's note obtained from Dr. Russo, Snowton's husband's physician, was procured illegally, and that despite numerous requests, had not yet been provided to Snowton.

During the following two months, DJS made numerous requests for Snowton to provide an updated and completed ADA form, including the specific information previously requested by Tilton. Because of the social distancing requirements imposed due to COVID, Snowton's appointments to obtain the information requested from her physician were repeatedly canceled and rescheduled. Tilton attempted to accommodate Snowton's difficulties and advised that she did not think an in-person visit with Snowton's physician was necessary in order for the physician to complete the form.

On May 14, 2020, Tilton emailed Snowton with a request to provide an updated status on her ability to obtain the necessary information requested from her physician. Further, DJS informed Snowton that due to the critical nature of the

---

[23]    Specifically, the response to Question 2B on the form did not address the major life activity affected by Snowton's alleged impairment, and the response to Question 2C did not address what Snowton could and could not do compared to the average person. Furthermore, the response to Question 4 did not address how adjustments may improve Snowton's job performance.

Juvenile Detention Home Supervisor position and the manpower shortage, to indefinitely hold her position open would constitute negligence on the part of DJS. Snowton did not respond.

HR emailed Snowton again on May 20, 2020, requesting that the ADA forms be completed by her physician by May 22, 2020. Snowton responded advising Tilton of her difficulties in scheduling an appointment with her physician to complete the forms, and because she had only recently learned that her insurance had been terminated, she was attempting to obtain other insurance in order to be able to see the physician.

No communications between Snowton and DJS occurred after the May 22, 2020 email exchange.

Snowton herself designated June 7, 2020 as her "return to work" date as reflected in her FMLA application. However, when Snowton failed to return to work or provide the requested additional ADA information prior to June 7, 2020, and had not submitted a written request for an extension of her leave beyond that date,[24] Director Juncker sent her a letter on June 9, 2020, advising that she was "presumed resigned" pursuant to the Jefferson Parish Personnel Rules of the Classified Service, effective June 8, 2020.[25] According to DJS, this determination was done in full accordance with the notice signed and acknowledged by Snowton in her FMLA application(s), in which she was advised that her failure to return on the date she stipulated would result in a presumed resignation designation.

On June 10, 2020, DJS issued a separation notice for Snowton for a "presumed resignation" as of June 8, 2020. The notice advised Snowton that she

---

[24] Snowton conceded at the hearing that at no time did she make a request for additional leave beyond June 7, 2020.

[25] The letter included the following: "The record indicates that you have been continuously absent from your position of Juvenile Detention Home Supervisor with the Department of Juvenile Services since November 30, 2019. Since that time, you have been granted and have exhausted all sick leave, annual leave, and the maximum allowable Family Medical Leave. Moreover, you have used approximately seventy (70) days of Leave Without Pay (LWOP)."

had used 70 days of LWOP, her FMLA had expired on February 28, 2020, and that she was considered resigned in accordance with JPPR, Rule IX, Section 13.5.[26]

On June 23, 2020, two weeks after Snowton was presumed resigned, Joan Ruiz, a Juvenile Probation Officer III, and Director Juncker prepared and signed a performance evaluation for Snowton rating her "below expectations" and assigned her a "zero under UPF7." Snowton contends the entire evaluation, and the reasons for being rated "below expectations," was based on the same allegations and conduct that resulted in her 2019 demotion, the appeal of which had been pending since December 26, 2019. Snowton alleges the evaluation was a reprisal against her for disclosing DJS's violations of Personnel Rules and other laws, and further, was indirect evidence of DJS's harassment and retaliation against her.

Snowton filed a petition for appeal of the presumed resignation on July 3, 2020, alleging discrimination, retaliation, among other claims, and asserted that she was a whistleblower entitled to whistleblower protection. A hearing on Snowton's appeal took place on March 23, 2021, and April 21, 2021, respectively. At the close of the proceeding, the Referee stated on the record that the evidence did not support Snowton's allegation of discrimination. Additionally, the Referee stated that the Personnel Board did not have jurisdiction over her FMLA and ADA claims, including those involving interference. Consequently, the Referee concluded that Snowton's claim was limited to whether the designation of "presumed resignation" was arbitrary and capricious or a violation of Jefferson Parish policy or procedure, and whether DJS retaliated against Snowton for filing an application for FMLA, advising the department of violations, or for filing an appeal of her demotion. Preliminarily, regarding the June 23, 2020 employee evaluation completed by DJS subsequent to Snowton's separation from the

---

[26] Snowton's husband passed away on June 13, 2020, causing a delay in her receipt of the separation notice.

department, the Referee ordered that DJS remove the evaluation from Snowton's personnel file noting that the evaluation should not have been performed.

On June 15, 2021, the Referee issued a written ruling denying Snowton's appeal, stating:

> On November 30, 2019, appellant was given leave then FMLA leave that could have caused her to be required to return to work on February 28, 2020. She was granted LWOP from February 28, 2020 to June 7, 2020. She alleges that she was not granted LWOP after that date because of discrimination or revenge for being a whistleblower. A great deal of evidence was introduced for the purpose of showing that discrimination or retaliation took place. However, she did not show either. The Parish was without a critical employee from November 30, 2019 to June 7, 2020. That position was held open for Donya Decou-Snowton and the other regular employees had to take over her duties during her absence. The Parish made a compelling case that no further LWOP was warranted and the Position now critical because of COVID needed to be filled.

As previously noted the Jefferson Parish Personnel Board issued an order on November 18, 2021, affirming the Referee's decision and denying her application for review. Snowton now appeals challenging the Board's order.

## ISSUES PRESENTED FOR REVIEW

On appeal, Snowton alleges that the Referee's ruling affirmed by the Personnel Board violated her due process rights because the ruling was arbitrary and capricious, and should be reversed because the Referee and Personnel Board ignored evidence she submitted that proved her claims. Specifically, Snowton contends the Referee and Personnel Board erred when they ignored evidence showing that (1) DJS retaliated against her after giving notice of DJS's illegal conduct in violation of Jefferson Parish Whistleblower policy; (2) DJS failed to follow its policy for a presumed resignation; and (3) DJS failed to follow its policies regarding sick leave in relation for her absences between November 30, 2019, and December 4, 2019. Snowton further contends that the Referee's order

confirmed by the Personnel Board included erroneous material facts. Snowton alleges that "the resignation was conducted without due process and in retaliation for seeking leave under FMLA, a reasonable accommodation under the ADA, and for reporting violations of these laws and policies to the Appointing Authority."

## LAW AND DISCUSSION

### *Applicable Legal Principles and Standard of Review*

The Jefferson Parish home rule charter established the Jefferson Parish Personnel Board and provides that it shall be "policy-making and quasi-judicial in nature." Jefferson Parish Charter, Art. 4, Section 4.03(C). *See Bruno v. Jefferson Parish Library Dept.*, 04-504 (La. App. 5 Cir. 11/30/04), 890 So.2d 604, 607. The Personnel Board has the exclusive power and authority to hear and decide cases, and may appoint a referee to hear and decide actions appealable under the Rules. JPPR, Rule II, Section 8.1. Moreover, Section 8.1(6) provides that decisions of the Personnel Board "shall be subject to review on any question or law or fact upon appeal to the Louisiana Fifth Circuit Court of Appeal."

Rule II, Section 4.3 of the JPPR provides that an employee's appeal alleging discrimination must be set forth in detail, and that the employee bears the burden of pleading discrimination with specificity. The JPPR also contains a whistleblower provision that provides protection to employees against reprisals from an appointing authority for disclosing a violation or a suspected violation of a state or federal law, or a Parish rule or regulation. JPPR, Rule II, Section 7.1. Under the whistleblower protection provisions, "reprisal" includes actions by the appointing authority such as discharge, negative performance evaluations or comments therein, or arbitrary and capricious changes in the conditions of employment. JPPR, Rule II, Section 7.3. An employee alleging he has suffered reprisals prohibited under the whistleblower protection provision has the right to

appeal to the Personnel Board, at which time the employee "shall bear the burden of proof either through first or indirect evidence." JPPR, Rule II, Section 7.5.

An appellate court reviewing a decision by the Personnel Board should apply the clearly wrong/manifest error standard of review. *See Robinson v. Jefferson Parish Dept. of Public Works-Drainage*, 13-474 (La. App. 5 Cir. 12/19/13), 131 So.3d 433, 438; *see also Adams v. Jefferson Parish Dept. of Community Action Programs*, 02-1090 (La. App. 5 Cir. 4/29/03), 845 So.2d 1147, 1150. On review by an appellate court, a civil service board's findings of fact are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. *Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So.2d 940, 945; *Bruno*, 890 So. 2d at 608. In evaluating whether an adverse action taken by the appointing authority is based on legal cause and commensurate with the infraction (*i.e.*, failing to return after a period of approved leave without pay), the reviewing court should not modify the order unless it is arbitrary, capricious, or characterized by an abuse of discretion. *Serignet v. Department of Health*, 08-469 (La. App. 4 Cir. 5/20/09), 15 So.3d. 1019, 1023, *writ denied*, 09-1371 (La. 10/2/09), 18 So.3d 113; *Moore*, 839 So.2d at 946; *City of Kenner v. Kenner Mun. Fire & Police Civil Service Bd.*, 09-465 (La. App. 5 Cir. 1/12/10), 31 So.3d 473, 482, *writ denied*, 10-0324 (La. 6/4/10), 38 So.3d 301. Arbitrary or capricious behavior means without a rational basis for the action taken. *Moore*, 893 So.2d at 946.

Employing these legal precepts to the issues presented for review, we now consider whether the decision reached by the Personnel Board affirming the Referee's findings was clearly wrong or manifestly erroneous, arbitrary or capricious, or characterized by an abuse of discretion.

***Deprivation of Snowton's Due Process Rights***

Snowton alleges that the evidence in this case demonstrates that her procedural and substantive due process rights were violated when she was given a poor evaluation after her presumed resignation, in violation of Jefferson Parish policy. Additionally, Snowton contends her due process rights were violated when DJS failed to provide her notice to return to work prior to receiving the notice of presumed resignation. We find no merit to these contentions.

The Referee ordered that Snowton's June 23, 2020 evaluation, which occurred after her separation from employment with DJS, be stricken from the record and removed from Snowton's personnel file. To the extent Snowton claims her rights may have been violated by receiving a negative evaluation after already having been separated from DJS, the evaluation has been removed from her personnel file and no damage has occurred. This assignment of error is moot.

Though Snowton contends her due process rights were violated when DJS failed to provide her with a notice to return to work at the expiration of her approved unpaid leave, she presented no evidence of a rule or policy requiring DJS to provide her with such notice, nor did our review of the JPPR reveal one. Additionally, in her FMLA application, Snowton—*not DJS*—designated June 7, 2020, as her last day of her leave, and the application she signed clearly stated that her failure to return to work following the expiration of her approved leave could result in a presumed resignation designation. It is disingenuous for her to now contend that she was unaware or was not given notice that her leave ended on June 7, 2020, as she signed the application designating the date, and then referred to it later in her communications with DJS. Snowton conceded in her testimony at the hearing that she did not request additional leave beyond June 7, 2020. Further, Rule IX, Section 5.1(c) of the JPPR provides that an employee is required to return to work on the day following the last day of leave without pay. Thus, we find that

22-CA-55                                                    20

Snowton failed to show that her due process rights were violated when she was notified that she was presumed resigned after she failed to return to work the day following June 7, 2020—the date *she* designated as the expiration of her leave.

### *Evidence allegedly ignored by the Referee and Personnel Board that DJS retaliated against Snowton after giving notice of the department's illegal conduct in violation of Jefferson Parish's whistleblower policy*

Snowton alleges the Referee and Personnel Board erred in ignoring evidence showing that DJS interfered with her FMLA action from the beginning, and that she was continuously harassed and retaliated against after she disclosed DJS's failure to follow policy. Specifically, Snowton contends the evidence shows that she did not receive notice of DJS's approval of her FMLA application filed on December 4, 2019, until after December 16, 2019, only after she disclosed to DJS their violations of policy and law. She claims DJS stipulated to their failure to follow policy and law when they disregarded the five-day notice requirement. Snowton further contends DJS interfered with her FMLA application by contacting her physician and her husband's physician without permission.

We disagree. The evidence and testimony shows that DJS had approved Snowton's FMLA application on December 6, 2019, but because Lacombe, the person at DJS responsible for processing FMLA applications, was absent from the office during this time, Snowton's approved application was not processed or mailed to her until after the required five-day period. Other than Snowton's allegations, there was no evidence that the late notice to Snowton was in any way connected to her December 16, 2019 disclosure of DJS's alleged violations of laws and policies, or meant to harass or interfere with her application.

The same is true about Tilton's telephone calls to the physicians for Snowton and her husband. While DJS stipulated that Jefferson Parish policy only allowed for the Parish physician to contact an employee's health care provider, Tilton testified that she believed she had authority to contact Snowton's physician

regarding the note Snowton provided to support her claim for sick leave, because the physician's note specifically stated "to call" if there were any questions. Additionally, Tilton needed clarification about the note as it did not state whether Snowton had been placed out of work or indicate whether Snowton had been seen for an in-office visit. As to calling the physician for Snowton's husband, Tilton testified that she needed authentication of the medical certification Snowton had submitted with her FMLA application. According to Tilton, she believed she had the authority under FMLA to authenticate or clarify a medical certification, and while this is correct under federal law, Jefferson Parish policy relegates this authority to the Parish physician.

Though Tilton was aware of the December 16, 2019 letter from Snowton's counsel alleging DJS's violations of law, Tilton expressed no ill will or retaliatory motive to interfere with Snowton's FMLA by "illegally" contacting the physicians as she expressed that she had a good-faith belief that she had the authority to do so. Snowton contends, however, that the information obtained as a result of Tilton's illegal calls, was used against her, resulting in DJS attempting to cut-off her leave before the approved June 7, 2020 date. While the record did show that following Tilton's conversation with Dr. Russo's office advising that Snowton's husband was being cared for in a nursing home, was not expected to get better, and Snowton could return to work on January 1, 2020, precipitated a response by DJS requesting Snowton to return to work on that day, she did not return to work and, in fact, remained on paid leave. We agree with the Referee and Personnel Board that this evidence did not establish retaliation or discrimination by DJS after receiving notice of its alleged violations of law and policy.

Snowton contends the Referee and Personnel Board ignored the testimony of Juncker that he doubted the veracity of her sick leave claim and whether she needed to care for her husband. Snowton alleges that she was harassed by Juncker

reviewing posts from her Facebook page allegedly showing her in Atlanta, Georgia, watching an LSU football game when she claimed to be sick and unable to report to work, and showing her spending time with her family during Christmas. Juncker also read a Facebook post Snowton wrote indicating that she was in Spain.[27] After publishing this post, Snowton testified that she was further harassed by being required to produce copies of her passport. Snowton argues that Juncker's testimony, admitting that DJS does not monitor or "stalk" employee's Facebook pages while out on FMLA, established that she was being treated differently than other DJS employees. We find that Snowton's allegations of harassment, or that she was being targeted or treated differently for filing for sick leave or FMLA, lack merit. Juncker testified that while he, admittedly, had suspicions regarding the legitimacy of Snowton's claim for sick leave and FMLA, he did not direct anyone to, nor did he himself, monitor Snowton's Facebook page. He could not recall how he obtained the information, but presumes it came from another DJS employee who was friends with Snowton on Facebook.

Snowton argues the Referee and Personnel Board ignored or discounted her testimony concerning two prior FMLA applications where she was treated differently. Regarding both prior applications filed in 2011 and 2012, Snowton's leave was extended by DJS beyond the 12-week period, and she was only contacted by the appointing authority every 90 days for a status check. She contends that the only difference between the two prior applications and the FMLA application at issue is that Snowton did not disclose violations of policy and law.

The evidence, however, does not support Snowton's contention. Snowton was given between twenty-four and twenty-six weeks of FMLA leave in 2011, 2012, *and* 2019. The testimony also showed that the department had different

---

[27]     Snowton testified that she purposefully wrote this particular post as she believed she was already being targeted and the subject of discrimination and retaliation for filing a FMLA application and for filing an appeal of her demotion.

FMLA coordinators in 2011 and 2019, and Snowton's employment position with the department was different. Additionally, the testimony showed that in 2020, DJS was experiencing a serious manpower shortage, including supervisors and detention officers. Employees were volunteering to work overtime to alleviate the staffing crisis. As DJS stated, to hold Snowton's position indefinitely would compromise the safety of the DJS facility, and would not be in the best interest of the service of the department.

After thoroughly reviewing the evidence and testimony, we find no merit to Snowton's contention that the Referee and Personnel Board ignored evidence that DJS retaliated against her after she notified the department of its alleged illegal conduct. The Referee and Personnel Board simply disagreed with Snowton's contentions and found that the totality of the evidence presented did not show that DJS's actions were retaliatory or discriminatory. We find the Referee and Personnel Board's findings were not manifestly erroneous or clearly wrong.

### *Evidence allegedly ignored by the Referee and Personnel Board that DJS failed to follow its policy for a presumed resignation*

We similarly find no merit to Snowton's allegation that evidence regarding DJS's actions and her presumed resignation were ignored. Snowton's main contention is that evidence was submitted showing that on the previous occasions where Snowton's leave was due to expire, DJS notified her of the date and time to return to work. However, in June 2020, DJS did not notify her of the expiration of her leave, but rather issued a letter of presumed resignation. According to Snowton, while DJS claims that she was on approved leave until June 7, 2020, in violation of JPPR and policy, she was never advised by DJS that she was on approved leave without pay until she received the June 2020 letter. Consequently, Snowton contends she was unaware that her leave was expiring on June 7, 2020.

After reviewing the JPPR, we found no rule—nor did Snowton identify one—or policy requiring DJS to notify an employee of their return date following expiration of a period of leave. Thus, Snowton failed to show that DJS did not comply with a rule or otherwise treat her differently from other similarly situated employees who are designated presumed resigned upon failing to return to work following the expiration of a period of leave.

### *Evidence ignored by the Personnel Board and Referee that DJS failed to follow its policies regarding sick leave for Snowton's absences*

Snowton requested sick leave from November 30, 2019, through December 4, 2019. She provided a doctor's note for her absences as requested by Trosclair, but was still designated as AWOL for those days and not paid for that time period. Snowton contends that she was taking, as the doctor's note substantiated, a prescribed controlled substance that prevented her from even coming on to DJS property. However, although the Jefferson Parish substance abuse policy prohibits an employee, especially an employee in a safety or security sensitive position such as Snowton, from reporting to work while a controlled substance is in the employee's system, which *may adversely affect* the employee's safe, productive, or efficient work performance, the prescription medication policy provides that an accommodation may be made when specific conditions are met or "unless and until the proper authorizations have been obtained."

Here, without seeking permission, Snowton merely advised Trosclair in an email, after being provided her new work schedule at Rivarde, that she would be on sick leave due to her medical condition, without stating the nature of the medical condition or her medication concerns. Moreover, in the note Snowton later provided by her doctor, it merely stated that she was a patient currently taking Xanax for anxiety, and to call the office if there was any questions. While the note advised that Snowton had been prescribed a controlled substance, the note did not

say that Snowton was unable to work or that her dosage could adversely affect her ability to perform the duties of her job. Moreover, under the circumstances—having been demoted and advised of a new work schedule, and first telling Juncker that she could not work on November 30, 2019, because she had plans to be out of town, and then emailing Trosclair that she would be on sick leave from November 30, 2019, through December 4, 2019, because of her medical condition—Juncker admittedly had doubts regarding Snowton's veracity in requesting leave for her own medical condition. The physician's note and subsequent call to his office did not allay those doubts. Consequently, Juncker made the administrative decision to deny approved leave and designated Snowton AWOL for those specific days prior to her FMLA leave.[28]

Moreover, Snowton was advised that she could submit additional documentation for reconsideration of the unapproved leave or submit a FMLA application of her own behalf. Instead, rather than submit additional information from her prescribing physician or a FMLA application, Snowton submitted a doctor's note from a non-prescribing physician following an office visit on December 12, 2019, stating that she should be excused from work from November 30, 2019, through December 4, 2019.

All of this evidence and conflicting testimony was presented at the hearing before the Referee and reviewed by the Personnel Board. After reviewing the evidence and testimony, we find there is no support for Snowton's contention that

---

[28] Additionally, pursuant to JPPR, Rule IX, Section 3.5(c), Jefferson Parish's sick leave policy states that "all employees will be allowed five (5) individual occurrences of unscheduled absences … not verified by a doctor's certificate in a leave year." Any employee using unscheduled leave in excess of five (5) occurrences … in a leave year shall submit a written statement by a registered physician or other acceptable authority certifying that the employee … was ill and, therefore, was unable to work during the period of sick leave of absence. Failure to provide a certificate from a registered physician or other acceptable authority shall result in the absence being an unauthorized leave of absence without pay and could result in other disciplinary actions." Thus, as it relates to "occurrences," the evidence provided DJS with another right to request additional documentation as Snowton had already used her five occurrences of unscheduled leave for the leave year prior to November 27, 2019, authorizing DJS to request a physician's note.

the evidence was ignored simply because the Referee and the Board determined that it did not support her contention that her AWOL designation was discriminatory or in retaliation for disclosing DJS's alleged violations of JPPR or Jefferson Parish policies. This assignment of error lacks merit.

***The Personnel Board ruling that affirmed the Referee's order included erroneous material facts.***

In this assignment of error, Snowton contends that the Referee's order contains several erroneous factual findings. Specifically, the statement that she was "given" leave between November 30, 2019, until her FMLA was approved that "could have caused her to be required to return to work on February 28, 2020," was "impermissibly vague." Snowton further disagrees with the Referee's factual findings that she alleged that she was not granted LWOP after that date because of discrimination or revenge for being a whistleblower, that the Parish was without a critical employee from November 30, 2019, through June 7, 2020, or that the Parish made a compelling case that no further LWOP was warranted, and the position was now critical because of COVID and needed to be filled.

The record, however, shows that Snowton was given leave from November 30, 2019, until her FMLA was approved—it was not "approved leave without pay," but rather, was "unapproved leave without pay" (or AWOL), which is a form of leave. The record also makes clear that the time between November 30, 2019, and December 4, 2019, was time taken by Snowton for *her own* medical condition, and because her FMLA application was for her *husband's* medical condition, that time could not be incorporated into FMLA leave. She was given the opportunity to submit her own completed FMLA application for that time period and she chose not to. The record shows that from November 30, 2019, through June 7, 2020—a total of six months—Snowton's position was left open for her, which timeframe incorporated: an unapproved leave without pay (November 30, 2019, through

December 4, 2019); FMLA (December 7, 2019, through February 28, 2020), and approved leave without pay (February 29, 2020 through June 7, 2020).

We find nothing vague about the Referee's finding that Snowton's FMLA could have ended on February 28, 2020, and that she would be required to return the following day. According to the Parish's FMLA policy, FMLA is typically granted for up to twelve weeks within a twelve-month period when taken continuously, as was done by Snowton. Although Juncker signed Snowton's FMLA application in which she designated June 7, 2020, or six months later, as her return to work day, Juncker and Lacombe testified concerning the circumstances regarding the approval of Snowton's application, and that the six-month return date was overlooked by Juncker when he signed it. Nonetheless, the Referee correctly determined that DJS held Snowton's position open for her for a period of six months. On this basis, we find no merit to Snowton's contention that she was granted leave only "after [she] advised of DJS's failure to follow the law and their policy that [DJS] retaliated against her with regard to FMLA leave."

Snowton further contends the Referee somehow misunderstood that her appeal asserted that DJS violated the whistleblower rule in retaliation and harassment against her after she filed her first appeal claiming discrimination relating to her demotion, which provided notice to DJS of their violations of Parish policies and state and federal law, including failure to follow FMLA and ADA policy. We disagree. The Referee simply found that the evidence presented at the hearing failed to show discrimination or retaliation by DJS against Snowden that related to her disclosure of these alleged violations.

Lastly, Snowton contends the Referee erroneously found that DJS was without a critical employee and that no LWOP was warranted, as the position was now critical because of COVID and needed to be filled. We disagree. The testimony showed that a critical manpower shortage, particularly with supervisors

and detention officers, existed before COVID, but was certainly exacerbated by it, causing additional stress on the department, and because of the required staff-to-inmate ratio, the position needed to be filled. Testimony concerning the demands on the department and the short staffing issue show that Juncker's decision not to extend Snowton's leave beyond June 7, 2020, was not discriminatory or retaliatory. Moreover, Snowton admittedly did not request leave beyond June 7, 2020, and did present any evidence to show that further leave was warranted. Accordingly, we find no merit to this assignment of error.

## CONCLUSION

Based on our review of the record, we find no error in the Personnel Board's November 18, 2021 ruling affirming the Referee's June 15, 2021 dismissal of Snowton's appeal of her presumed resignation. Considering Snowton's allegations of discrimination, retaliation, and entitlement to whistleblower protection, pursuant to JPPR, Rule II, Section 4.3 and Section 7, she bore the burden of proving that DJS's alleged reprisal against her (*i.e.*, her presumed resignation) was in retaliation of her disclosure of a violation or suspected violation and for no other legitimate reason(s). Once presented with the complicated facts of this case, and having considered the applicable JPPR and the Parish's policy regarding FMLA, the Board and Referee both found that DJS's designation of Snowton as presumed resigned was appropriate pursuant to Parish policy, her signed FMLA application, and her failure to return to work, and was non-discriminatory and non-retaliatory in nature. Based upon the totality of the evidence and testimony presented, the Referee found, and the Personnel Board agreed, that Snowton failed to carry her burden of proving that her presumed resignation was the result of discrimination or retaliation for being a whistleblower.

For these foregoing reasons, we affirm the Jefferson Parish Personnel Board's November 18, 2021 decision upholding the Referee's dismissal of Snowton's appeal of her presumed resignation.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 9, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-55

**E-NOTIFIED**
JEFF PARISH PERSONNEL BOARD (CLERK)
STEPHANIE DOVALINA (APPELLANT)          CRYSTAL M. HEINE (APPELLEE)

**MAILED**
JEFFERSON PARISH PERSONNEL BOARD
(DISTRICT JUDGE)
200 DERBIGNY STREET
SUITE 3100
GRETNA, LA 70053